WILLIAM DONAGHUE *vs.* JOHN H. GAFFY.

Hartford District, May T., 1886. PARK, C. J., CARPENTER, PARDEE,
LOOMIS and GRANGER, Js.

A libel is a false and malicious publication concerning a person, which
exposes him to public ridicule, hatred or contempt, or hinders virtuous
men from associating with him.

The defendant published of the plaintiff and his brother, who were a firm
of wholesale liquor dealers, the following :—" To the Liquor Dealers
of Hartford: In order that you may be on your guard against the
base treachery of a concern you may be doing business with, I desire
to state a few facts in regard to my experience with this firm. I refer
to Donaghue Bros., consisting of William and Edward Donaghue. I
have been in the habit of buying nearly all my goods of them for
years, but because I quit buying of them, they went to the savings
bank, of which I rented my place, and offered ten dollars more a
month than I was paying, and, after getting their lease, served a notice
on me to immediately vacate. The firm is not worthy of our support,
being guilty of foul and unfair dealings to get square, as they say,
with one who exercises the right to trade where he likes, and I sin-
cerely believe they deserve that kind of warfare known as ' boycot-
ting,' and request those who believe in the fair thing, as between man
and man, to give their support to some other house. For further par-
ticulars call on the undersigned. J. H. GAFFY." In an action for a
libel in this publication it was held that it was not a libel *per se,* and
that the plaintiff could not recover without proof of special damage.

In actions for libel there is a substantial agreement in the decisions of the
courts that the court may be required to pass upon the effect of the
language of a publication by a demurrer to the declaration, as also
when the question is whether the verdict is contrary to the evidence.
Where the question is not thus raised the courts differ upon the ques-
tion whether the court or the jury shall determine the question of
libel or no libel.

But where the publication is in terms so clear that no circumstances are
required to make it clearer, the better rule seems to be that the ques-
tion of libel or no libel is one of law to be determined by the court.

[Argued May 4th—decided July 27th, 1886.]

ACTION for a libel; brought to the Superior Court in
Hartford County. The case is the same one reported in 53
Conn. R., p. 43, except that the case as it then stood was an
action brought by William Donaghue and Edward Donaghue
as joint plaintiffs. When it went back for a new trial the

complaint was amended by dropping the name of Edward Donaghue as a plaintiff, leaving William Donaghue as the sole plaintiff. The case was tried to the jury, upon the general issue, before *Sanford, J.*, who, upon motion of the defendant, granted a nonsuit, and rendered judgment for the defendant. The plaintiff appealed, assigning as error— 1. That the court refused to allow the publication complained of to go to the jury for their determination as to whether the matter therein contained was libelous or not. —2. That if the jury have no voice in determining whether a publication of this nature is libelous or not, then this circular should have been held by the court as libelous *per se*, and the evidence as to the injury to the feelings and reputation of the plaintiff should have been admitted.

The case is fully stated in the opinion.

*C. E. Perkins* and *J. G. Calhoun*, for the appellants.

1. It is the province of the jury to decide whether this circular is libelous or not. The English rule upon this subject has been settled for nearly half a century. Fox's libel act was passed in 1792, and it is there provided (32 Geo. III., ch. 60,) that in all criminal proceedings for libel the jury shall be the judges of the question of libel or no libel under the definition of the court. The passage of this statute so turned the drift of legal opinion that in 1840 the leading case of *Baylis* v. *Lawrence*, 11 A. & E., 920, established definitely the same rule in civil cases, it being there held that the judge is in no way bound to state to the jury his own opinion on this point; that in fact it would be wrong for him to lay down as a matter of law that the publication complained of was or was not a libel. And this rule has not been questioned or departed from since. In the United States the same rule is usually followed in criminal cases, the right of the jury being established in many instances by constitutional provisions and statutes. But in civil actions there is a marked variance of opinion and practice, some of the states, like Massachusetts, California and Maine, adhering to the English rule, while others, as Penn-

sylvania, Georgia, Wisconsin and Vermont, hold'ng that
the question of libel or no libel is to be decided by the
court. *Shattuck* v. *Allen*, 4 Gray, 540; *State* v. *Goold*, 62
Maine, 509; *Van Vactor* v. *Walkup*, 46 Cal., 124; *Miller* v.
*Butler*, 6 Cush., 75; *Dickey* v. *Andros*, 32 Verm., 55. Such
being the division of opinion on the question away from
home, it is evident that little assistance is to be derived from
these decisions in determining which of the two views has
been adopted by our own state. It is of course admitted
that the court may be required to pass upon the effect of
the language by a demurrer to the declaration, where the
question of justification is involved or where the publica-
tion charges a crime, but the present case has to do only
with a publication which has a tendency to arouse bad pas-
sions, and to bring a man into contempt and ridicule before
his fellow men. The first case in Connecticut in which the
point is raised is *Mix* v. *Woodward*, 12 Conn., 262, in which
the libel charged the plaintiff with malpractice in packing
a jury. All that is said in the opinion on this point is as
follows:—" But the court decided that the words if pub-
lished of the plaintiff did necessarily import that he had
actually been guilty of malpractice in packing a jury, and
that the words were on the face of them libelous. And it
is contended that in this the court erred; that the words do
not necessarily import this, but only that the plaintiff had
been deprived of his office on a charge of having packed a
jury; and that what was the defendant's meaning was a
question of fact for the jury to decide. * * * It is very
difficult to see how the court could have avoided putting a
construction on this publication. How could the question
in regard to the justification be determined without con-
struing the libel?" The question was next raised in *Haight*
v. *Cornell*, 15 Conn., 82. It was there admitted that the
writing complained of was a libel if it was a malicious pub-
lication, and the court say: " Having set up in justifica-
tion that it was a communication privileged by the occasion,
the object and intent of the defendants in making it became
material to the case, and were necessarily and properly re-

ferred to the jury." But the matter in dispute is only
fairly reached and decided in *Graves* v. *Waller*, 19 Conn.,
90. The court below, after defining and explaining libel,
instructed the jury that "they might consider the whole
libelous matter in connection with the circumstances proved
or admitted, and say what was the meaning of the writing;
what it imputed to the plaintiff as to motives, objects, prin-
ciples, acts and character; and if they were such as to make
the writing libelous according to the definition of libel ex-
pressed by the court, they would find the matter libelous
and sufficient to sustain the action." The Supreme Court,
in sustaining the charge, say:—" The court could not with
any propriety have charged the jury in a different manner.
They were told they might consider the whole matter to-
gether in connection with the circumstances proved or
admitted, and from the whole say whether the writing in
question was libelous according to the definition given.
Any other course would have been alike embarrassing to
the jury, unjust to the plaintiff, and puerile in the court."
This is the last decision in this state upon the question. It
is only eight years later than *Baylis* v. *Lawrence*, and the
conclusion is reasonable that the English case was the founda-
tion of the opinion in *Graves* v. *Waller*, and that Connecti-
cut is to be considered as having adopted the doctrine of
the King's Bench. The statute declaring the rights of
juries provides that the court " shall submit all questions
of fact to the jury, with such observations on the evidence
for their information as it may think proper, without direc-
tion as to how they shall find the facts." Gen. Statutes,
p. 442. In order to determine the question of whether this
publication is a libel or not it is necessary to ascertain
whether it has a tendency to bring ridicule and contempt
on the plaintiff and to injure him in the estimation of his
fellow-men. This is purely a question of fact. Whether a
person appears contemptible or ridiculous cannot be a ques-
tion of law, and whether among persons generally certain
charges would lessen their opinion of the plaintiff is as
much a question of fact as whether a person accused of

negligence has exercised such care as persons generally would exercise. *Jenner* v. *A'Becket*, 25 L. Times, N. S., 464.

2. If it is the province of the court to decide whether or not a writing is a libel, is this circular libelous? Libel has been four times defined in our state, (*Stow* v. *Converse*, 3 Conn., 341; *Hillhouse* v. *Dunning*, 6 id., 407; *State* v. *Avery*, 7 id., 268; *Lindley* v. *Horton*, 27 id., 61;) and in nearly the same language, as "a false and malicious writing, published of another, which renders him contemptible or ridiculous in public estimation, or exposes him to public hatred or contempt, or hinders virtuous men from associating with him." It is not necessary that the matter complained of be sufficient to lay the foundation for an action of slander; it is enough if the defendant induce an ill opinion to be had of the plaintiff, or make him contemptible or ridiculous. The following are instances in which writings, not charging a crime, infectious disease or malfeasance in office, are yet held to be libelous, because they contain those imputations which are calculated to villify a man and injure his reputation.—That the defendant had made the plaintiff "pay a note twice." *Shelton* v. *Nance*, 7 B. Monr., 128. That the plaintiff "will not sue in a certain county because he is known there." *Cooper* v. *Greeley*, 1 Denio, 347. An obituary notice of a living person. *McBride* v. *Ellis*, 9 Rich., 313. Saying of a witness, "I believe he knew his statement was not true." *Coombs* v. *Rose*, 8 Blackf., 155. Stating that the plaintiff "was once in difficulties." *Cox* v. *Lee*, L. R., 4 Exch., 284. Charging the plaintiff with *ingratitude*, even though the facts on which the charge is based be stated and they do not bear it out. *Cox* v. *Lee, supra; Hoare* v. *Silverlock*, 12 Q. Bench, 624. Stating of a young nobleman that he drove over a lady and killed her, and yet attended a public ball that very evening. *Churchill* v. *Hunt*, 1 Chitty, 480. Writing a letter charging his sister with having unnecessarily made him a party to a chancery suit, and adding "it is a pleasure to her to put me to all the expense she can." *Fray* v. *Fray*, 17 C. B., N. S., 603. Imputing to a Presbyterian "gross intol-

erance " in not allowing his hearse to be used at the funeral of a Roman Catholic servant. *Teacy* v. *M'Kenna*, Irish R., 4 C. L., 374. Writing of a lady that she has her photograph taken incessantly, and receives a commission on the sale of such photographs. Odgers on Libel and Slander, 23. Circulating a report that the plaintiff had placed his grown daughter on a rail *a la cavalier*. *Colby* v. *Reynolds*, 6 Verm., 489. See also *Haight* v. *Cornell*, 15 Conn., 74; *Clark* v. *Binney*, 2 Pick., 115. The circular published by the defendant, it is true, charges the plaintiff with nothing criminal or illegal, but it does accuse him of doing a base, contemptible act. The libel lies in the malicious accusation that the plaintiff is one who entertains and nurses malignant, hostile and contemptible feelings, who is so far governed by jealousy of competitors in trade that he will do mean, unnecessary and costly acts for the sake of revenge. It contains a direct charge of unworthy and base conduct. The defendant could only have designed to produce a public opinion of contempt and dislike.

It may be claimed by the defendant that the former decision in this case settled the question that this circular is not libelous *per se*, but it is apparent that the question, as presented there, was entirely different from the one now before the court. It was there held that the action was brought by a firm for a libel upon its members as partners, and therefore no injury to the reputation or feelings of either plaintiff was admissible. The only damage which could be recovered was for injury to the business of the firm, and no question of motive or of improper personal conduct could arise or be in issue. We do not suppose the court intended to go far beyond any question which could possibly arise in that case, and hold that in a different action, one brought by an individual for injury to his reputation and feelings, when the act alleged, though legal in itself, was alleged to be done from malicious and revengeful motives, no action could be maintained. We submit that the rule as to libel *per se* is entirely different in a case where an individual is attacked for doing a legal act from malicious and revengeful

motives, from that where a partnership is attacked upon the same ground. The intent and motive is a personal act affecting the character and conduct of the individual, and not a partnership act. There may be many libelous publications against an individual who is a member of a firm, and they may indirectly cause persons to cease trading with the firm, yet the partnership could not sue for such damage; they would not be libels *per se* on the partnership, but it would be extraordinary to claim that because they were not libelous *per se* against the partnership they were not as against the individual. So there may be publications relating to a partnership which are not libelous *per se* as to it, but which seriously affect the feelings and reputation of an individual member of the firm, and are libelous as to him. It would open a broad field if an enemy of a member of a firm could publish abusive circulars against the members as partners, and then defend on the ground that the business of the firm had not suffered. Unless the court is prepared to go so far as to say that a false and malicious publication alleging acts to have been done from mean, malicious and revengeful motives is not libelous *per se* because the acts themselves are not illegal, we submit that the court below erred.

*G. G. Sill* and *H. O'Flaherty*, with whom was *D. L. Aberdein*, for the appellee, contended.—That the publication was not libelous *per se;* citing *Donaghue* v. *Gaffy*, 53 Conn., 43; Folkard's Starkie on Slander, 4. That damages could therefore be recovered only where special and alleged; citing Odgers on Libel and Slander, 291, 309, 318; *Bostwick* v. *Nickelson*, Kirby, 65; *Cook* v. *Cook*, 100 Mass., 194; *Pollard* v. *Lyon*, 91 U. S. Reps., 225. That the only damage alleged was to the firm, and that the plaintiff could not recover in his own name for this; citing *Le Fanu* v. *Malcolmson*, 1 H. L. Cases, 637; *Solomons* v. *Medex*, 1 Stark., 191. That proof of the plaintiff's mental suffering would have been inadmissible, even if alleged; citing Odgers on Libel and Slander, 309, 313; *Lynch* v. *Knight*, 9 H. L.

Cases, 592; *Beach* v. *Ranney*, 2 Hill, 312; *Terwilliger* v. *Wands*, 17 N. York, 57; *Anon.*, 60 id., 262.

PARDEE, J. This is a complaint for libel. The issue was closed to the jury, and judgment rendered against the plaintiff as in case of nonsuit; he appeals. Upon the trial the plaintiff introduced evidence tending to prove that the defendant published of him a circular in words as follows:

" To the Liquor Dealers of Hartford and vicinity: In order that you may be on your guard and protect yourselves against the base treachery of a concern you may be doing business with, I desire to state a few facts in regard to my experience with this firm. The concern I refer to is Donaghue Bros., consisting of William and Edward Donaghue. I have been in the habit of buying nearly all my goods of them for years, but because I quit buying of them they went to the Middletown Savings Bank, of which I rented my place, and offered ten dollars more a month than I was paying, and, after getting their lease of the premises, served a notice on me to immediately vacate. Considering the mean and unfair manner in which this firm have treated me, I have wondered to myself whose turn will come next, should anybody feel like exercising their right to buy of whom they like. I believe it is time to speak out and warn the trade against a firm who, because we buy of somebody else, subject ourselves to the same treatment I have received. The firm of Donaghue Bros. are not worthy of our support, being guilty of foul and unfair dealings to ' get square,' as they say, with one who exercises that right that every honest man has who pays his bills, to trade where he likes, and I sincerely believe they deserve that kind of warfare recently inaugurated in a little green isle across the sea, known as ' boycotting,' and request those who believe in the fair thing, as between man and man, to give their support to some other house. For further particulars call on the undersigned. *J. H. Gaffy.*"

The plaintiff also offered evidence tending to prove that, at the time of said publication, he was engaged in the

wholesale liquor business in Hartford, with his brother Edward, as co-partners, under the firm name of Donague Bros., and claimed from that evidence that the libel was published as well of and concerning the plaintiff as of and concerning the firm. The plaintiff then offered to prove injury and damage to his reputation and feelings caused by the publication, to which evidence the defendant objected, on the ground that the circular, if a libel, was not a libel against the plaintiff as an individual; and second, because the complaint contained no allegation of injury to the feelings and reputation of the plaintiff as an individual, nor any allegation as to special damage. The court sustained the objection and refused to admit the evidence, and the plaintiff excepted. The plaintiff claimed that the circular was libelous *per se*, and that he might recover in the suit without proof of special damage; but the court held otherwise.

The plaintiff, at his request, was permitted to offer evidence of any damage caused by the circular to the business of the firm, or to his interest as a partner thereof; but, after permission given, he did not offer any such evidence. The defendant moved for a nonsuit, because no evidence of any damage had been given, and no special damage had been shown. The plaintiff objected thereto, and claimed that he had a right to have the question submitted to the jury, whether, if they found the circular to have been published as alleged, it had a tendency to hold him up to scorn and ridicule, and throw a contempt upon him, which might affect his reputation and comfort. But the court held otherwise, and gave judgment of nonsuit against the plaintiff, on the ground that no damage had been proved. To all of which the plaintiff excepted.

The plaintiff in his brief claims that there are two errors in the rulings of the court—1st, in refusing to allow the jury to determine whether the publication is or is not libelous; 2d, in rejecting evidence as to injury to his reputation and feelings, and in holding that the circular is not libelous *per se*. As to the first. In civil causes for libel there is a substantial agreement in the decisions of the courts that the

court may be required to pass upon the effect of the language of a publication by a demurrer to the declaration as a whole, or to a count in particular; also, when the question is whether the verdict is contrary to the evidence. Otherwise, in some states the rule is that the court shall determine the question as to libel or no libel. *Hunt* v. *Bennett*, 19 N. York, 173; *Pittock* v. *O'Neil*, 63 Penn. St., 253; *Pugh* v. *McCarty*, 44 Geo., 383; *Gabe* v. *McGuiniss*, 68 Ind., 538; *Gregory* v. *Atkins*, 42 Verm., 237; *Gottbehurt* v. *Hubacheck*, 36 Wis., 515. In others the jury. *Shattuck* v. *Allen*, 4 Gray, 540; *Van Vactor* v. *Walkup*, 46 Cal., 124; *State* v. *Goold*, 62 Maine, 509.

Of course, it is for the jury to say whether or not there has been a publication referring to the plaintiff, whether or not it is malicious and false, and whether or not the sense and meaning are as charged. But if the publication is expressed in terms so clear and unambiguous that no circumstances are required to make it clearer than it is of itself, we think the better rule is that the question of libel or no libel is one of law to be determined by the court, and we think we are not concluded to the contrary by the decisions of this court. The case of *Twombly* v. *Monroe*, 136 Mass., 464, seems to recognize a possibility that questions of fact may be so entirely absent from a cause that the question of libel or not shall remain one purely of law to be disposed of by the court as by a nonsuit or its equivalent; the court saying: "We are satisfied with the rule that at the trial of civil actions against libel it is only when the court can say that the publication is not reasonably capable of any defamatory meaning, and cannot reasonably be understood in any defamatory sense, that the court can rule, as matter of law, that the publication is not libelous, or withdraw the case from the jury, or order a verdict for the defendant." In the jurisdictions in which the question is submitted to the jury in the first instance, it often comes upon motion in arrest or other like form to be reviewed and re-determined by the court of last resort as a pure question of law. It would seem to be better, therefore, that it should

be so treated from the beginning, and thus avoid a possible unseemly result, namely, the submission of a question of law to the jury and a reversal of their determination thereon by the court.   For instance, in England, in *Parmeter* v. *Coupland,* 6 Mees. & Wels., 105, the judge, after telling the jury what in point of law constituted a libel, left it to them to say whether the publications in question were calculated to be injurious to the character of the plaintiff.   The jury having found a verdict for the defendants, the Court of Exchequer set it aside because the jury had erred upon that point.   In *Mulligan* v. *Cole,* L. R., 10 Q. B., 549, a civil suit for libel, the judge directed a nonsuit upon the ground that the publication was not capable of the defamatory meaning attributed by the innuendo.   It was held that the nonsuit was properly granted, MELLOR, J., saying of the publication: "I cannot help thinking that, to an ordinary person, it would convey no more than the legitimate information, and that no such defamatory meaning as that imputed by the innuendo, nor any other defamatory meaning, was intended to be expressed."   In *Capital & Counties Bank* v. *Henty,* 5 C. P. Div., 514, the question of libel or no libel was left to the jury; they failed to agree, and were discharged.   On motion to enter judgment for the defendants, it was held by the Common Pleas Division that the publication was susceptible of the meaning alleged, that there was evidence to support the innuendo and also of express malice, and that the case must go again to the jury.   On appeal, it was held in the Court of Appeal, reversing the decision of the court below, "that there was no evidence that the circular was defamatory in either a primary or a secondary sense, and that, even if there was any such evidence, the circular was issued on a privileged occasion, and there was no evidence of express malice."   On appeal to the House of Lords, L. R., 7 Appeal Cases, 741, it was held, affirming the decision of the Court of Appeal, "that in their natural meaning the words were not libelous; that the inference suggested by the innuendo was not the inference which reasonable persons would draw; that the onus lay

Donaghue *v.* Gaffy.

on the bank to show that the circular had a libelous tendency; that the evidence, consisting of the circumstances attending the publication, failed to show it; that there was no case to go to the jury; and that the defendants were entitled to judgment."

As to the second point. This court has defined a libel as being a false and malicious publication of a person which exposes him to public ridicule, hatred or contempt, or hinders virtuous men from associating with him. This publication is by a retail seller concerning wholesale sellers of liquor. It charges that the plaintiff, moved to anger because the defendant ceased to be a purchaser from him and his partner, overbid him in the matter of a lease, and compelled his removal. The sting of the publication is that this act was born of a desire on the part of the plaintiff rather to get the defendant out of, than to get himself into, a particular place of business. But to overbid is permissible in law—permissible even when the motive is to supplant another in the possession of an advantageous location and an established run of custom. Of course these acts fall far short of the requirements of the golden rule, as do many others in the heat of competition in trade. The publication is a hostile comment upon the manner in which the plaintiff used, within the pale of the law, the power inseparable from the possession of money; it is a declaration that, in his eagerness to accumulate, he disregards the interests of others. The public will read the circular and disapprove of the plaintiff's methods in business, but it does not impute to him any act which will expose him to their hatred or contempt, or will cause them to separate themselves from him, in the sense or to the degree required by the law of libel. In the absence of special damage he has no cause of action.

There is no error in the judgment complained of.

In this opinion the other judges concurred.