GEORGE BURNS *vs.* THE TELEGRAM PUBLISHING COMPANY.

Third Judicial District, New Haven, June Term, 1915.

THAYER, RORABACK, WHEELER, BEACH and BENNETT, Js.

A libel is a false and malicious publication concerning a person, which exposes him to public ridicule, hatred or contempt, or hinders virtuous men from associating with him.

In an action for libel the plaintiff may properly allege in his complaint, by way of innuendo, that the publication in question conveyed a defamatory meaning to its readers, provided the article is reasonably capable of such an interpretation or implication. It is only when such a meaning is clearly excluded, that the court can withdraw the case from the consideration of the jury, or rule that the publication is not libelous as matter of law.

Alleged errors must be confined to those claims of law which were raised in the trial court, were decided adversely to the appellant, and are specifically assigned in his reasons of appeal.

Unless the record discloses that a material fact has been found without evidence, or that some undisputed fact has been omitted, the finding will not be corrected on appeal.

Argued June 1st—decided July 16th, 1915.

ACTION to recover damages for an alleged libelous publication, brought to the Superior Court in Fairfield County where a demurrer to the complaint was overruled (*Tuttle, J.*) and the cause was afterward tried to the court, *Burpee, J.;* facts found and judgment ren-

dered for the defendant, and appeal by the plaintiff. *No error.*

*David S. Day*, for the appellant (plaintiff).

*Thomas M. Cullinan*, for the appellee (defendant).

RORABACK, J. This action was brought against the defendant to recover damages for the publication of an article in the "Bridgeport Telegram," a newspaper published in the city of Bridgeport in Fairfield county. The defendant interposed a demurrer to the sufficiency of the complaint, which was overruled. An answer was then filed, which admitted the publication of the article and denied the other allegations of the complaint. The answer also averred that the publication was in regard to a matter of public interest, and concerned public property and public business, and was made by the defendant in good faith and without intent to impute to the plaintiff any fraudulent, dishonest or criminal act, and was privileged.

The complaint alleged that on February 4th, 1914, the defendant published the following concerning the plaintiff:—

"Burns' Claim has the Fire Board Guessing.
Charge Coming Now for Use of Gasoline
Tanks Creates Some Sharp Comment.

"Ex-Fire Commissioner Burns, of 630 North avenue, served a notice on the board of fire commissioners that has had that body guessing for the past month and has since called for some rather pertinent remarks. Since the former commissioner has been retired from the board he has served notice on that body that they are given until April 1 to stop using some tanks on his premises for the storage of gasoline, or after that date if they do use them to pay him $20 a month for their use.

"Something less than a year ago, about 8 months, as nearly as can be ascertained, the fire department bought some 8,000 gallons of gasoline at a price of 10 cents a gallon, which was rather cheap. At that time Mr. Burns was a fire commissioner, and in his zeal to further the efforts of the board stated that he had two tanks on his premises that belonged to the Goodrich company, formerly of this city, but then of New Haven, which they neglected to take away, and which the department could gladly have the use of, free of charge.

"Shrunk 1,000 Gallons.

"Some mechanics among the firemen cleaned the tanks and put faucets on one of them and they have been used since. Normally the department uses a thousand gallons of gasoline a month, and the supply in the tanks ran out over a month ago. Then the strange fact was discovered that the 8,000 gallons had shrunk a thousand gallons. This was rather surprising as evaporation alone could scarcely be expected to account for that much of a shrinkage, even if the tanks were elevated instead of underground.

"Since the supply was gone the department has been buying its gasoline as it was needed from the Standard Oil Co., and it is more than certain that the fire department will no longer use the tanks in the custody of Mr. Burns. There is a plan on foot, which the mayor is considering, of purchasing some large tanks, and store in them enough 'gas' to supply all city departments. The fact that Mr. Burns did not attempt to charge the city for the use of tanks until he was deposed as a member of the board caused considerable surprise in fire circles."

The complaint also averred: "The defendant meant thereby that the City of Bridgeport had been deprived of all or a part of said 1,000 gallons of gasoline mentioned in said publication by fraudulent, dishonest or

criminal acts of the plaintiff. Said publication was false and malicious."

This court has defined libel as being "a false and malicious publication of a person which exposes him to public ridicule, hatred or contempt, or hinders virtuous men from associating with him." *Donaghue* v. *Gaffy*, 54 Conn. 257, 268, 7 Atl. 552. Odgers, in his work on Libel and Slander (5th Ed. p. 1) says: "Words which produce . . . any appreciable injury to the reputation of another are called defamatory." Defamation is "a false publication, calculated to bring one into disrepute." 1 Cooley on Torts (3d Ed.) 366.

Is this publication injurious to the good name of the plaintiff, or may it tend to bring him into disrepute? It may be said of this article that it is ambiguous. It might be susceptible of a libelous meaning, and capable of being injurious to the plaintiff. It might have been understood by one reading it as implying that the plaintiff was guilty of some dishonest action in connection with the loss of the gasoline. So understood, the article was libelous. It being capable of such a meaning, it was proper for the plaintiff in his complaint, by way of innuendo, to allege that it conveyed such a meaning to its readers. The rule which governs such cases in this State is well settled: "It is only when the court can say that the publication is not reasonably capable of any defamatory sense, that the court can rule, as matter of law, that the publication is not libelous, or withdraw the case from the jury, or order a verdict for the defendant." *Donaghue* v. *Gaffy*, 54 Conn. 257, 266, 7 Atl. 552. See, also, 25 Cyc. 450, 451.

It is not necessary here to decide whether or not the article is libelous *per se*. It is enough to say that the article, when read in connection with the other allegations of the plaintiff's complaint, presents a good cause of action.

The trial court ruled that, as a matter of law, the publication was not libelous *per se.* It does not necessarily follow that a new trial should be granted, as the court below also held that, upon the facts found, the plaintiff had no right to recover. A judgment based upon the latter conclusion would be responsive to the issues. It did not violate any principle of law, and it is consistent with the subordinate facts set forth in the finding.

The plaintiff cannot avail himself of the claim now made, that "the defendant failed to allege the truth of the publication and therefore its falsity was admitted." Claims of error are limited to the claims of law made in the trial court and to those specifically made in the assignments of error. The record discloses that neither of these conditions exist in the present case.

The trial court has found that the statements in this article were substantially true, were made without malice, and that their sense and meaning are not such as are alleged in the complaint; that the motive for its publication was proper and justifiable, and that it was not made recklessly, or with disregard for the rights and reputation of the plaintiff, but with reasonable care in obtaining the facts to which the article related; that there was sufficient occasion for its publication as a matter of current news concerning public business and public property; and that it was written and published in good faith. The court also found that the plaintiff had not asked for any retraction, and that he offered no evidence of any damage, general or special.

The plaintiff contends these conclusions are not justified by the evidence, which is now before us under § 797 of the General Statutes, and we are asked to correct the finding. This we cannot do unless the record discloses that the facts were found without

evidence. A careful examination of the evidence fails to disclose that any fact material to any question of law has been found without evidence, or that any admitted or uncontroverted fact has been omitted from the finding; therefore the finding must stand as made. These conclusions of fact render the judgment of the court below the proper one.

There is no error.

In this opinion the other judges concurred.