Karen Conway ZUPNIK, Plaintiff,

v.

The ASSOCIATED PRESS,
INC., Defendant.

Civil No. 3:95:CV0795 (DJS).

United States District Court,
D. Connecticut.

March 31, 1998.

Susan E. Dixon, Goring & Dixon, Winstead, CT, Albert E. Goring, Jr., Goring & Dixon, Stonington, CT, for Plaintiff.

Ralph G. Elliot, Tyler Cooper & Alcron, Hartford, CT, for Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SQUATRITO, District Judge.

This is an action for damages in which the plaintiff, Karen Conway Zupnik, alleges that the defendant, The Associated Press, Inc., defamed her and cast her in a false light. It is brought pursuant to the diversity jurisdiction of this court. 28 U.S.C. 1332. The defendant now moves for summary judgment on both counts. The issues presented are: (1) whether the plaintiff is an involuntary public figure; and, if so; (2) whether the plaintiff has presented evidence sufficient to prove, by clear and convincing evidence, that the defamatory falsehood was made with knowledge of its falsity or reckless disregard of its truth or falsity.

For the reasons that follow, the court concludes: (1) that the plaintiff is a public figure; and (2) the plaintiff has presented no evidence tending to demonstrate actual malice.

### FACTS

Examination of the complaint, together with the memoranda, affidavits and Local Rule 9 statements submitted in support of the motion for summary judgment, and the response thereto, discloses the following.

The plaintiff is the wife of James S. Zupnik, M.D. In 1986, Dr. Zupnik was cited on 11 counts of negligence and incompetence by the State of Connecticut department of health services division of medical quality assurance. The Connecticut medical examining board held four public hearing on these allegations. Dr. Zupnik was placed on five years professional probation by the medical examining board.

In August 1992, the Connecticut Attorney General began an investigation into Dr. Zupnik after a complaint by the New England Health Care Employees Welfare Fund. The Attorney General determined that Dr. Zupnik had over billed the fund hundreds of thousands of dollars during the years 1989–1991. The Attorney General referred the matter to the State of Connecticut department of health services division of medical quality assurance and the Office of the Chief State's Attorney. In September 1992, Dr. Zupnik signed a consent decree with the department of health services in which he agreed never to practice medicine in Connecticut and to pay a civil penalty of $20,000.

In January, 1993, Dr. Zupnik was arrested and charged with first degree larceny for over billing over 20 different health care insurers. Eventually, Dr. Zupnik was sentenced to three years in prison and ordered to pay $700,000 in restitution to the insurers.

On April 12, 1993, Brenda Brautigam, a former patient of Dr. Zupnik, filed a complaint in the superior court for the State of Connecticut against both Dr. Zupnik and the plaintiff. The first five counts of the complaint alleged that Dr. Zupnik was negligent in the care and treatment of Brautigam. The second five counts alleged that Karen Conway Zupnik conspired with her husband in a fraudulent conveyance of property for the purpose of hiding assets from potential judgment creditors.

On May 9, 1993, the New London Day published a story summarizing the criminal and civil charges against Dr. Zupnik. The story included a summary of Brautigam's complaint against both Zupniks. On May 10, 1993, the Associated Press released a news summary of the New London Day story. The AP news summary contained the following statement:

> Brenda Guay Brautigam, 32, alleges … that Dr. Zupnik and his wife, Karen Conway–Zupnik, are to blame for her losing her word processing job and that they jeopardized her marriage and hurt her ability to properly care for her child because she became addicted to the drug percodan.

This excerpt was incorrect because the complaint did not allege that Karen Zupnik was responsible for the plaintiff's drug addiction. The Brautigam complaint alleged only that Karen Zupnik defrauded the plaintiff by helping her husband to fraudulently transfer five properties from his name to her name. The complaint alleges that this news summary therefore defamed her and cast her in a false light.

## DISCUSSION

 Under Connecticut law[1], a defamation is defined as a "false and malicious publication of a person, which exposes him to public ridicule, hatred or contempt, or hinders virtuous men from associating with him." *Burns v. Telegram Pub. Co.,* 89 Conn. 549, 552, 94 A. 917 (1915). In order to sustain a cause of action for defamation, the plaintiff must show that the defendant made "an unprivileged publication of a false and defamatory statement." *Strada v. Connecticut Newspapers, Inc.,* 193 Conn. 313, 316, 477 A.2d 1005 (1984). "A prima facia case of defamation is made when a plaintiff demonstrates that: (1) a defamatory statement was made by the defendant; (2) the defamatory statement identifies the plaintiff to a reasonable reader; (3) the defamatory statement is published to a third person; and (4) the plaintiff's reputation suffers injury." *Slez v. Komarow,* 2 CSCR 176, 177 (December 29, 1986, Harrigan, J.).

### A. Public Figure.

The First Amendment limits Connecticut's libel law in various respects. For the purpose of determining the constitutional protection afforded a defendant's speech under the First Amendment to the United States Constitution, the court must first address whether the plaintiff is a public figure. The question of whether a plaintiff is a public figure "is for the trial judge in the first instance." *Rosenblatt v. Baer,* 383 U.S. 75, 88, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). "The determination of whether a plaintiff is a public figure is dispositive of the standard of proof and the degree of fault of the defendants which the plaintiff has to prove." *Miles v. Perry,* 11 Conn.App. 584, 588, 529 A.2d 199 (1987).

The rule set forth by the United States Supreme Court in *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), prohibits a public official from recovering damages for a defamatory falsehood unless he proves that the false statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not. *Holbrook v. Casazza,* 204 Conn. 336, 342, 528 A.2d 774 (1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 699, 98 L.Ed.2d 651 (1988). Those who are "public figures ... may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with such actual malice." *Holbrook v. Casazza,* 204 Conn. 336, 342, 528 A.2d 774 (1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 699, 98 L.Ed.2d 651 (1988) quoting *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

 The court concludes that the plaintiff is a public figure for purposes of the defamation analysis here. In the present case, the plaintiff has "become a public figure through no purposeful action of [her] own." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 345, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Despite the fact that the plaintiff has not sought a public role, she has been thrust into the role of a public figure by virtue of her marriage to Dr. Zupnik.

Dr. Zupnik was clearly a public figure. He engendered intense media and public interest as a result of the numerous allegations of criminal conduct and professional negligence. These allegations included insurance fraud, improprieties in his professional practice and negligence. The Connecticut medical examining board held four public hearing on these allegations and thereafter placed him on professional probation for five years. In September 1992, the department of health services relieved Dr. Zupnik of his licence to practice medicine and fined him $20,000. Dr. Zupnik subsequently pleaded guilty to insurance fraud and was sentenced to a term of imprisonment for three years. He was or-

---

1. The parties do not dispute the applicability of Connecticut law to the plaintiff's defamation claim. A court of the United States sitting in diversity must look to the law of the forum state to determine the rules governing the choice of law. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In an action for defamation by a multi-state publication, the court has recognized that the substantive law of the plaintiff's domicile governs. *See Hazlitt v. Fawcett Publications,* 116 F.Supp. 538, 539 (D.Conn.1953); *Dale System, Inc. v. Time,* 116 F.Supp. 527, 529–30 (D.Conn. 1953). Zupnik is domiciled in Connecticut. Accordingly, the court applies Connecticut law with respect to the issue of defamation.

dered to make restitution in the amount of $700,000. All of these events were the subject intense debate, discussion and scrutiny within the media, the government, the courts, the medical licensing boards and, of course, the general public.

Dr. Zupnik's notoriety spilled over upon the plaintiff and drew her into the public spotlight. Specifically, she was accused of conspiring with her husband in a fraudulent conveyance of property for the purpose of hiding assets from potential judgment creditors. In this manner the intense public interest surrounding Dr. Zupnik's investigation, conviction and imprisonment, as well as the plaintiff's alleged involvement in fraudulent transfers of property, transformed the plaintiff into an involuntary public figure, that is, someone who had "become a public figure through no purposeful action of [her] own." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). See also *Carson v. Allied News Company*, 529 F.2d 206, 210 (7th Cir.1976) (Johnny Carson's wife a public figure); *Dameron v. Washington Magazine, Inc.*, 779 F.2d 736, 741 (D.C.Cir.1985) (Air Traffic Controller who was "an ordinary citizen ... and never acquired any notoriety apart from the crash ... [was raised] involuntarily, to the status of a limited purpose public figure"); *Meeropol v. Nizer*, 560 F.2d 1061, 1066 (2d Cir.1977) *cert. denied*, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978) ("In the course of extensive public debate revolving about the Rosenberg Trial [their children] were cast into the limelight and became public figures under the Gertz standards"); *Brewer v. Memphis Pub. Co., Inc.*, 626 F.2d 1238, 1257 (5th Cir.1980) (The husband of a woman who once dated Elvis Presley was also a public figure.)

## B. *The Requirement of Actual Malice.*

Because the plaintiff is a public figure, she must prove, by " 'clear and convincing evidence,' that the defamatory falsehood was made with actual malice, that is with knowledge of its falsity or with reckless disregard of its truth or falsity." *New York Times v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 14, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). Moreover,

a court ruling on a motion for summary judgment must be guided by the New York Times "clear and convincing" evidentiary standard in determining whether a genuine issue of actual malice exists—that is, whether the evidence presented is such that a reasonable jury might find that actual malice has been shown with convincing clarity.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The plaintiff does not argue that the defendant had actual knowledge of the falsity of the defamatory statement. The plaintiff argues, however, that "there is an issue of fact as to whether or not, considering his actions and behavior and the way he edited his own work, at that particular point, given the training and emphasis regarding accuracy he had experienced, he showed a reckless disregard for the truth or falsity of that second paragraph of the rewrite, or a reckless indifference to the effect it would have upon the reputation or piece of mind of the plaintiff."

 The court agrees with the defendant that the record here is devoid of either recklessness or malice. "The United States Supreme Court has indicated that, at a minimum, actual malice requires that there be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Woodcock v. Journal Publishing Company, Inc.*, 230 Conn. 525, 537, 646 A.2d 92 (1994) *cert. denied* 513 U.S. 1149, 115 S.Ct. 1098, 130 L.Ed.2d 1066 (1995) quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). The plaintiff must not only prove actual malice, but she must do so with "convincing clarity." *Bose Corp. v. Consumers Union of the United States, Inc.*, 466 U.S. 485, 511 n. 30, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984). The Supreme Court has described the burden imposed upon a public figure plaintiff as "substantial indeed." *Herbert v. Lando*, 441 U.S. 153, 174, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979).

To withstand a motion for summary judgment, she must present "affirmative" and "concrete" evidence sufficient to meet that heightened standard of proof. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The plaintiff has failed to present any such evidence. To begin with, she has produced no evidence directly showing the defendant knew or was made aware of any distortion in the news summary. She is forced to rely upon an inference that the defendant was aware of the inaccuracy. The plaintiff claims only: (1) the defendant was sensitive to the need for accuracy; and (2) "admits there was an error in rewriting which he has no excuse for, or explanation for." The court concludes that the most that can be said of the inaccurate sentence is that the defendant was negligent in preparing and reviewing the news rewrite. The facts presented here do not, however, demonstrate actual malice with the convincing clarity that the constitutional standard requires. The defendant's motion for summary judgment must therefore be granted.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment (document no. 24) is granted. The clerk is directed to close the file.