[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The defendant, Jon L. Schoenhorn ("Attorney Schoenhorn"), has moved for CT Page 5040 summary judgment on the plaintiffs' Second Amended Complaint, dated May 12, 1997, on the grounds that: (1) the statement attributed to Attorney Schoenhorn is a statement of opinion protected by the First Amendment to the United States Constitution; (2) the statement is not defamatory; (3) the statement is privileged as "fair comment"; (4) the plaintiffs are public figures who cannot show that Attorney Schoenhorn acted with actual malice in publishing the statement; and (5) the plaintiffs' invasion of privacy claim, which is premised upon their flawed defamation claim, is likewise insufficient as a matter of law.
Factual Background
Defendant, Jon L. Schoenhorn, is an attorney who has been a member in good standing of the Connecticut Bar since 1982. He has been sued for defamation and invasion of privacy by the plaintiff, Thomas Wilkinson, in his individual capacity and as guardian and next friend of the minor plaintiffs, Benjamin Wilkinson Wiegand and Jonathan Wiegand (the "Minor Plaintiffs"). The alleged defamatory statement was made in front of the Courthouse in Enfield for Geographical Area Number 13 in connection with Attorney Schoenhorn's representation of James "Bo" Gritz at a bond hearing and was broadcast by New England Cable News Network. It consisted of the following:
 He says the real issue here is not Bo Gritz, it's the safety of two children who are currently with a father that some medical, legal and law enforcement officials say has molested them. The authorities here have a tremendous focus for some reason on Linda Wiegand. He believes that it is misplaced and that somehow he just got caught up in it.
This case was preceded by a drawn-out divorce and custody battle between Mr. Wilkinson and his ex-wife, non-party, Linda Wiegand. Mr. Wilkinson commenced the dissolution action in Connecticut in 1992. Shortly thereafter, Ms. Weigand moved to Vermont with the minor children and immediately complained to Gordon Ahlers, a family practitioner, and Stephen Balsam, a child psychiatrist, that she suspected that Wilkinson had molested their children. Dr. Ahlers and Dr. Balsam interviewed the minor children and opined that they had been sexually abused. Thereafter, in January, 1993, Thomas Wilkinson was arrested in Vermont in connection with the allegations of sexual abuse.
After an unsuccessful attempt to have the divorce proceedings transferred to Vermont, Ms. Wiegand fled from Connecticut with the minor children. On July 7, 1993 the Connecticut Superior Court ordered that the children should be returned to Connecticut and further ordered that Karen CT Page 5041 Wilkinson, Thomas Wilkinson's sister, was to have full pendente lite custody of the children.
On July 15, 1993 the State of Vermont dropped its criminal prosecution against Thomas Wilkinson "without prejudice." Vermont has never reinstated the criminal sexual abuse charges against Mr. Wilkinson. Ms. Wiegand went into hiding with the children in February of 1994. On April 27, 1994, Judge Santos awarded sole custody of the children to Thomas Wilkinson. In the Memorandum of Decision granting the divorce between Wiegand and Wilkinson, Judge Santos stated "[o]f particular note is the intolerable cruelty which the Defendant (Wiegand) has caused by subjecting the Plaintiff( Wilkinson) to false allegations of sexual abuse, and the humiliation which resulted from that and by depriving the Plaintiff of any contact for over 26 months."
In July 1996, Ms. Wiegand was captured on a felony warrant in Las Vegas by the Federal Bureau of Investigation. Mr. Wilkinson flew to Las Vegas, and the children were returned to his physical custody. Apparently, Ms. Wiegand was released on bond, went to New York and began ex parte proceedings there to regain custody of the minor children and/or prevent Mr. Wilkinson from having custody of the children. Again, Wiegand enlisted the assistance of Dr. Ahlers. At Wiegand's request, and based on her statement that she believed the children were being abused by Wilkinson, Dr. Ahlers sent a statement dated August 19, 1996 to the New York Court. He stated (apparently without having seen the minor children for three years) that he believed they were in danger from abuse by Wilkinson. In an affidavit, signed pursuant of Wilkinson's libel claim against Dr. Ahlers, he stated that "as of August 19, 1996, I had not formed a conclusion that the boys had been abused."
On September 30, 1996, James "Bo" Gritz, a former presidential candidate and Vietnam war hero, was arrested in Connecticut and charged with attempted kidnapping of the Minor Plaintiffs. Attorney Schoenhorn represented Mr. Gritz at his bond hearing and made the statement set forth above.
Truth as a Defense
In a civil action for libel, where the protected interest is personal reputation, the rule in Connecticut is that the truth of an allegedly libelous statement of fact provides an absolute defense. Dacey v.Connecticut Bar Assn., 170 Conn. 520, 538, 368 A.2d 125 (1976), citingCcx Broadcasting Corporation v. Cohn, 420 U.S. 469, 489-90,95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). Contrary to the common law rule that required the defendant to establish the literal truth of the precise statement made, the modern rule is that only substantial truth need be CT Page 5042 shown to constitute the justification. Goodrich v. WaterburyRepublican-American, Inc., 188 Conn. 107, 112-113, 438 A.2d 1317 (1982).
The defendant argues that it is true that some medical, legal, and law enforcement officials, such as Gordon Ahlers and Stephen Balsam havesaid that Wilkinson molested his children and have presented evidence of such statements. Is that enough to establish truth?. Comment e to the Restatement (Second), Torts § 581A provides:
 It is necessary to find that the defamatory matter contained in the statement is true. When one person repeats a defamatory statement that he attributes to some other person, it is not enough for the person who repeats it to show that the statement was made by the other person. The truth of the defamatory charges that he has thus repeated is what is to be established.
Emphasis added.
The Court in Goodrich stated:
 "It is not necessary for the defendant to prove the truth of every word of the libel. If he succeeds in proving that "the main charge, or gist, of the libel' is true, he need not justify statements or comments which do not add to the sting of the charge or introduce any matter by itself actionable." (Footnote omitted.) Gatley, Libel and Slander (2d Ed.) p. 178; see Eldredge, The Law of Defamation (1978) 71; Orr v. Argus-Press Co., 586 F.2d 1108, 1112 (6th Cir. 1978). The issue is whether the libel, as published, would have a different effect on the reader than the pleaded truth would have produced. Griffin v. Clemow, 28 Conn. Sup. 109, 111, 251 A.2d 415 (1968), citing Fleckenstein v. Friedman, 266 N.Y. 19, 23, 193 N.E. 537
(1934).
188 Conn. at 113.
Arguably the "main charge, or gist" of the allegedly libelous statement in this case is that Thomas Wilkinson molested his children. While the defendant has submitted evidence that certain people have opined at certain points in time that Thomas Wilkinson molested his children, he does not dispute other evidence which tends to prove that Thomas Wilkinson did not molest his children. Therefore, the court cannot grant summary judgment on the basis of truth as a defense. CT Page 5043
Fair Comment and Opinion
The defendant also argues that it is clear that his allegedly libelous statement was opinion and not fact. The privilege of fair comment applies to opinions but not to statements of fact.
 A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known. See generally 1 Harper James, Torts 5.28, p. 458 n. 11, 7.8, p. 560; Black's Law Dictionary (5th Ed. 1979); Ballentine's Law Dictionary (3d Ed. 1969). In a libel action, such statements of fact usually concern a person's conduct or character. 3 Restatement (Second), Torts 565. An opinion, on the other hand, is a personal comment about another's conduct, qualifications or character that has some basis in fact. Id., 566. p. 171.
 This distinction between fact and opinion cannot be made in a vacuum, however, for although an opinion may appear to be in the form of a factual statement, it remains all opinion "if it is clear from the context that the maker is not intending to assert another objective fact but only his personal comment on the facts which he has stated." Ibid. Thus, while this distinction may be "somewhat nebulous . . . [t]he important point is whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact." [5] 1 Harper James, op. cit., 5.28, p. 458; Mashburn v. Collin, 355 So.2d 879, 885 (La. 1977).
Goodrich v. Waterbury Republican-American, Inc., 188 Conn. at 111-112.
"Where the court cannot reasonably characterize the allegedly libelous words as either fact or opinion because, for example, innuendo is present, this becomes an issue of fact for the jury, which would preclude a directed Verdict. This is similar to the rule which requires the jury to decide whether an ambiguous assertion is reasonably capable of a defamatory meaning. Burns v. Telegram Publishing Co., 89 Conn. 549, 552,94 A. 917 (1915), quoting Donaghue v. Gaffy, 54 Conn. 257, 266, 7 A. 552
(1886)." Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107,112, fn 5, 438 A.2d 1317 (1982). CT Page 5044
It is not clear whether the defendant's statement here could be understood by "ordinary persons" as opinion or as a statement of existing fact. Therefore, the court cannot grant summary judgment on the basis that the defendant's statement was an opinion.
Public Issue
The defendant claims that even if his statement was defamatory, it was protected by the First Amendment because Wilkinson was a public figure. He further argues that as a public figure Thomas Wilkinson's failure to introduce evidence of the defendant's actual malice under New York TimesCo. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) entitles the defendant to a summary judgment. Wilkinson denies that he was a public figure.
The Court in Goodrich summarized the evolution of the law concerning defamation against public figures as follows:
 The privilege of "fair comment," which was one of the most important privileges realized at common law, was a qualified privilege to express an opinion or otherwise comment on matters of public interest. Charles Parker Co. v. Silver City Crystal Co., 142 Conn. 605, 615, 116 A.2d 440 (1955). "Traditionally, fair comment concerned persons, institutions or groups who voluntarily injected themselves into the public scene or affected the community's welfare, such as public officials, political candidates, community leaders from the private sector or private enterprises which affected public welfare. . . ."[7] (Emphasis added.) Mashburn v. Collin, supra, 882. The privilege was elevated to constitutional status, however, by a number of United States Supreme Court cases Starting with New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and those cases govern our inquiry. See Prosser, Torts (4th Ed. 1971) 115, p. 792, 118, p. 819.
 In New York Times Co., the court (p. 280) rejected the common law standard of malice and held that media defendants were not liable for defamatory statements of fact or opinion about a public official absent proof that a statement was published with "`actual malice' — that is, with knowledge that it was CT Page 5045 false or not." (Emphasis added.) The constitutional privilege was first extended to public figures;[8] Curtis Publishing Co. v. Butts, 388 U.S. 130, 154-55, 87S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (plurality opinion); and later to private individuals who became involuntarily associated with matters of "public or general concern." Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 48, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971) (plurality opinion). In both of those cases, the plaintiff was still required to prove the "actual malice" Standard of New York Times Co.
 The Rosenloom rationale was ultimately rejected, however, in Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). In so doing, the court noted that to apply this standard to public figures merely on the basis of their involvement in matters of "public or general interest" would inadequately serve the competing values at stake, namely, the societal interest in "uninhibited, robust, and wide-open" debate on public issues; id., 340, quoting New York Times Co. v. Sullivan, supra,
270; and the "legitimate state interest . . . [in] the compensation of individuals for the harm inflicted on them by defamatory falsehood." Gertz v. Robert Welch, Inc., supra, 341.
188 Conn. 114-116.
In Wolston v. Reader's Digest Assn., Inc., 443 U.S. 157, 167 (1979) the Supreme Court stated that "[a] private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." The Court inGertz recognized two types of public figure. In the first type "an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." 418 U.S. at 351. In the second type, "an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." Id. The Court further stated that:
 Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life. It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and CT Page 5046 extent of an individual's participation in the particular controversy giving rise to the defamation.
418 U.S. at 352.
Where the parties have presented conflicting evidence as to the nature and extent of the plaintiff's participation in the controversy giving rise to the defamation, as in this case, the plaintiff's public figure status is an issue of fact for the jury. Therefore, summary judgment cannot be granted on the basis of that status.
For the reasons set forth above, the summary judgment is denied.
By the court,
Aurigemma, J.