No. 22,505.

PERMELIA LATIMER, *Appellant*, v. F. J. OYLER, *Appellee*.

### SYLLABUS BY THE COURT.

SLANDER—*Words Used in Argument to Jury—When Language is Privileged.* An attorney defending a client on the charge of statutory rape, in his argument to the jury asserted that the girl's mother who was present and assisting in the prosecution knew who killed another daughter of hers and was conniving with the complaining witness to shield the murderer whom he charged with being guilty of the offense laid in the prosecution he was defending. It was shown that he stated that he made these assertions from his opinion of the testimony in the criminal action. *Held*, in an action for slander based thereon that such language was privileged, and the demurrer to the plaintiff's evidence was rightfully sustained.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed March 12, 1921. Affirmed.

*R. E. Cullison*, of Iola, for the appellant.

*Travis Morse*, and *W. H. Anderson*, both of Iola, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff appeals from an adverse judgment, the action being one for slander. The petition alleged that in the courthouse in the presence and hearing of and while facing towards the plaintiff and the audience, the defendant spoke falsely of her, saying in substance that she knew who killed her daughter; that she knew Roy Ard killed her and that she kept the secret for him; that she was harboring and shielding the man she knew to have murdered her own daughter, and that if she would only tell what she knew one of the greatest murder mysteries that ever was in the state would be cleared up, and "Roy Ard would have been in the penitentiary or his neck would have been stretched."

The defendant answered denying the language charged, averring that if it had been uttered by him it would have been true as he verily believed. It was further alleged that he was a regularly practicing attorney; that the plaintiff was the mother of Viola Ard, deceased, who was the wife of Roy Ard, and the mother of Katie Latimer; that some months before this action was begun Viola, Roy and Katie were riding in an automobile when Viola was shot to death, and later Roy was arrested charged with her murder; that prior to the date alleged in plaintiff's petition Katie made complaint and caused Eldon Hawley to be arrested charging him with the crime of statutory rape upon her and claiming that he was the father of her illegitimate child; that during all of that time Katie made her home with her mother; that Hawley's defense in the criminal action was *not guilty*, and that Roy Ard was the father of the child and the charge against Hawley was the result of a conspiracy between Katie Latimer and her mother; that the plaintiff herein was present during all of the Hawley trial, took a very active part in the proceedings, sat with the prosecuting witness, Katie, and aided her, and often during the

trial became very demonstrative; that at the time and place set forth in the petition the defendant was engaged as one of Hawley's counsel in arguing the law and evidence to the jury, and all and any language used by him was so used in making one of the arguments to the jury and had reference to plaintiff's testimony and demeanor and that of other witnesses in the action, and their credibility; that all comments and language used were, in this defendant's best judgment, necessary and proper for the defense of Hawley; that Katie Latimer had told Hawley before the trial that she knew Roy had killed his wife, Viola, and Hawley had repeated this statement to the defendant before he made this argument; and that the result of the trial was the acquittal of Hawley, and the language used was addressed to the jury and intended for their consideration and was privileged and justified.

At the close of plaintiff's evidence the trial court sustained a demurrer thereto, and from this ruling the appeal is taken. The official stenographer died and the court prepared, or settled, a statement of the proceedings and the evidence. The evidence is thus summarized:

"Concisely stated, it is shown that in a trial had in the district court of Allen county, Kansas, in which the state of Kansas was plaintiff and Eldon Hawley was defendant, the defendant Hawley was charged with the offense of statutory rape upon the daughter of the plaintiff in this case. That the plaintiff was a witness in said cause and testified in behalf of the state; that during the progress of the trial and the argument, she sat within the bar near the counsel table. That F. J. Oyler, defendant, was one of the attorneys for the defendant Hawley in that case and that he made an argument to the jury in behalf of his client. That under his plea of not guilty Hawley, from his standpoint claimed that there was a conspiracy between the plaintiff and others to fix the paternity of the child of Katie Latimer upon the defendant Hawley."

There is the further statement that in the trial of the case against Hawley the plaintiff testified in behalf of the state; that the defendant Oyler was one of the defendant's counsel and whatever alleged words were used by him concerning her were so used while engaged as attorney for Hawley during the trial and argument of such cause, and that on cross-examination she was asked in substance whether at the time of making these statements the defendant Oyler preceded them with the language that it was his opinion based upon the evidence, or words to that effect, and she replied that he did.

Latimer v. Oyler.

One of plaintiff's witnesses testified that he was present in the court room during a large part of the trial and Oyler said in substance that based upon the facts disclosed by the testimony in the cause or upon the evidence in the cause it was his opinion that Mrs. Latimer knew who killed her daughter, Viola Ard, and if she would tell all she knew the mystery surrounding the murder would be cleared up. Another witness swore that Oyler said that from the evidence in the cause he believed Permelia Latimer knew who killed her daughter, that Roy Ard did it, and she was keeping it a secret for his protection.

Thus the sole question is raised whether the alleged statements were privileged.

The plaintiff cites *Carpenter v. Ashley,* 148 Cal. 422, and *Hastings v. Lusk,* 22 Wend. (N. Y.) 410. In the former it was held that upon trial in justice court of a case of larceny, words spoken by the district attorney charging opposing counsel with perjury or subornation of perjury were not privileged. The counsel assailed was not a witness, but had made some remarks irritating to the prosecutor who proceeded to "get even" by the charge referred to. The court thought that to concede to counsel when trying a case—

"Unbridled license to defame whomsoever he pleases, whether or not the person defamed be a witness or party in the pending action or a stranger, and whether or not the defamatory matter be in any way pertinent or relevant to the subject-matter of inquiry in the action or has any reference thereto . . . would work intolerable wrong to innocent persons who would be without any remedy." (p. 425.)

In the Hastings case it seems that the defendant, while testifying for himself before a magistrate in a trial on a criminal charge preferred against him by the plaintiff, accused him of perjury—whether in that or some other case, the report does not show. It was held that the court was right in refusing to arrest the judgment for six cents recovered by the plaintiff, and that words spoken by counsel in conducting his own case, in the course of judicial proceedings, if relevant and pertinent to the question at issue, are privileged, however false, malicious and injurious; that such words not relevant or pertinent, are nevertheless privileged if spoken in good faith under the belief that they were relevant and proper.

The rule is settled by our former decisions that slander uttered by an attorney in the trial of a case is not actionable if it have reference to the cause under consideration, although false and malicious. In *Klover v. Rugh,* 99 Kan. 752, 162 Pac. 1179, an attorney during a trial in defense of a client in an action for alimony said of the plaintiff that she was crazy. In the opinion Mr. Justice Burch said:

"One of the reasons for the privilege is that an attorney ought to be free to act for his client, without being restrained by apprehension of personal consequences to himself, and that such independence is destroyed by being exposed to litigation." (p. 754.)

A similar ruling was made in *Weil v. Lynds,* 105 Kan. 440, 185 Pac. 51. In that case a witness volunteered the statement that the plaintiff had in a certain transaction embezzled a thousand dollars.

"As a general rule libelous or slanderous matter published in the due course of a judicial proceeding is absolutely privileged and will not support an action for defamation, although made maliciously and with knowledge of its falsity; . . . as to parties, counsel and witnesses the privilege attaches only to such matter as is applicable and pertinent to the subject of the inquiry or relevant to the issue." (25 Cyc. 376, 377; see, also, 17 R. C. L., § 80, p. 333.)

The judgment is affirmed.