(563 P.2d 506)
No. 48,215

Sherman H. Sampson, *Appellant,* v. James Rumsey, *Appellee.*

No. 48,224

Sherman H. Sampson, *Appellant,* v. Keith Sanborn, *Appellee.*

Opinion filed April 15, 1977.

*John Terry Moore,* of Miller, Connolly & Moore, of Wichita, for the appellant.

*E. Lael Alkire* and *John D. Clark,* of Alkire, Clausing, Wilkinson and Wilson, of Wichita, for the appellee, James Rumsey.

*Richard K. Hollingsworth,* special assistant district attorney, and *Stephen M. Joseph,* assistant district attorney, for the appellee, Keith Sanborn.

Before Foth, P.J., Abbott and Parks, JJ.

Parks, J.: Plaintiff, Sherman H. Sampson, has filed separate

appeals from orders of the district court of Sedgwick County, Kansas, sustaining the motions of the defendants, James Rumsey and Keith Sanborn, to dismiss plaintiff's actions for failure to state a claim upon which relief can be granted. The petition was framed in slander, conspiracy to slander, abuse of process, invasion of privacy, and intrusion on seclusion.

The plaintiff's alleged causes of action arose out of the same trial, *State of Kansas v. James Baker, et al.*, Sedgwick County District Court Case No. CR 10346. In his appeals plaintiff has raised substantially identical claims of error. The appeals were consolidated for oral argument and are consolidated for decision.

The facts may be summarized as follows: On July 15, 1974, the Sedgwick County district attorney's office prepared a criminal complaint and issued a warrant charging James Baker and his wife with four counts of conspiracy to sell and the sale of heroin. The appellees-defendants (Keith Sanborn, the then Sedgwick County district attorney, and James Rumsey, an assistant district attorney) prosecuted the action. During the trial, the plaintiff Sampson was called as a witness for the state. The trial was before a jury which returned a verdict of "not guilty" for the Bakers.

The following statements were made by defendant Rumsey in his closing argument to the Baker jury: "If anybody ever smacks of public corruption, Sherman Sampson certainly did. . . . Sherman Sampson's son got up here and testified and he told us Sherman Sampson was a liar. . . . I went to great lengths to show he was a liar. He didn't say what he was a liar about. He just said he lied. . . . Oh Sherman Sampson, see what a son of a bitch he is. . . ."

Plaintiff filed two four-count petitions (both petitions were later amended) to which each of the defendants filed a motion to dismiss. All four counts of the petition applied to defendant Sanborn, while only Counts II and III applied to defendant Rumsey.

Plaintiff next filed an affidavit of prejudice in the trial court seeking removal of all judges in the 18th Judicial District. It was plaintiff's opinion that he could not get a fair and impartial trial because of the close relationship that had existed over the years between the judges and the district attorney. The affidavit was assigned to the Honorable William P. Meek of the 11th Judicial District for a determination of its legal sufficiency. Judge Meek

ruled that the affidavit of prejudice was insufficient because K.S.A. 20-311f (*a*) does not allow the disqualification of more than one judge in any affidavit filed pursuant to K.S.A. 20-311d. Following this ruling, the case was reassigned to Judge Kline. The refusal to disqualify all the judges in the district is assigned as plaintiff's first claim of error.

A primary rule for the construction of a statute is to find the legislative intent from the language, and where the language used is plain and unambiguous and also appropriate to an obvious purpose, the court should follow the intent as expressed by the words used. (*State v. V.F.W. Post No. 3722*, 215 Kan. 693, 695, 527 P. 2d 1020; *City of Overland Park v. Nikias*, 209 Kan. 643, 498 P. 2d 56.)

K.S.A. 20-311f (*a*) provides:

"No party shall be granted more than one change of judge in any action, but each party shall be heard to urge his objections to a judge in the first instance: *Provided, however,* That a party shall have seven (7) days after pretrial, or after written notice of the judge to which the case is assigned or before whom the case is to be heard, whichever is later, in which the affidavit may be filed."

We are unable to give the effect to the statute in question sought by plaintiff on the theory advanced that it applies to all judges in a multi-judge district. It is clear that the legislature used the word "judge" in a singular form to restrict the use of the affidavit of prejudice to the disqualification of only one judge.

Following a hearing on defendants' motions to dismiss, the trial court sustained the motion of defendant Sanborn on Counts II, III, and IV and further sustained the defendant Rumsey's motion on all counts. In dismissing these counts, the trial court found that the plaintiff had failed to state a cause of action against the defendants.

On December 10, 1975, Count I of plaintiff's petition, which survived defendant Sanborn's motion to dismiss, was dismissed without prejudice by the plaintiff with the approval of the defendant and the trial court, and is not part of this appeal.

Plaintiff argues that the trial court erred in dismissing Counts II, III, and IV of his amended petition. Counts II and III alleged slander, conspiracy to commit slander and abuse of process as to both Sanborn and Rumsey. Count IV alleged invasion of privacy and intrusion upon plaintiff's seclusion against Sanborn only.

We consider first the dismissal of Counts II and III. In con-

sidering a motion to dismiss for failure of the petition to state a claim for relief, a court must accept the plaintiff's description of that which occurred, along with any inferences reasonably to be drawn therefrom. However, this does not mean the court is required to accept as true conclusory allegations as to the legal effect of events the plaintiff has set out, if these allegations do not reasonably follow from the description of what happened or if these allegations are contradicted by the description itself. (*Weil & Associates v. Urban Renewal Agency*, 206 Kan. 405, 479 P. 2d 875, Syl. 3.)

The standards to be applied in establishing absolute immunity for prosecuting attorneys may be summarized by the following statements and authorities: In *Clear Water Truck Co., Inc. v. M. Bruenger & Co., Inc.*, 214 Kan. 139, 142-143, 519 P. 2d 682, the court cited with approval the following rule of absolute privilege in judicial proceedings referred to in *Froelich v. Adair*, 213 Kan. 357, 516 P. 2d 993:

". . . Judicial proceedings are absolutely privileged communications, and statements in the course of litigation otherwise constituting an action for slander, libel, or one of the invasion of privacy torts involving publication, are immune from such actions. They are privileged communications because of the overriding public interest in a free and independent court system. This absolute privilege extends immunity to parties to private litigation and to anything published in relation to a matter at issue in court, whether said in pleadings, affidavits, depositions or open court. (*Weil v. Lynds*, 105 Kan. 440, 185 Pac. 51.)"

Absolute privilege is founded on public policy and provides immunity for those engaged in the public service and in the enactment and administration of law. It is not intended so much for the protection of those engaged in that service as it is for the promotion of the public welfare, the purpose being that members of the legislature, judges of courts, jurors, lawyers and witnesses may speak their minds freely and exercise their respective functions without incurring the risk of a criminal prosecution or an action for recovery of damages. (*Marney v. Joseph*, 94 Kan. 18, 20, 145 Pac. 822.)

The rule is settled by our former decisions that a defamatory statement uttered by an attorney in the trial of a case is not actionable if it has reference to the cause under consideration, although false and malicious. (*Latimer v. Oyler*, 108 Kan. 476, 480, 196 Pac. 610.)

In *Imbler v. Pachtman*, 424 U. S. 409, 47 L. Ed. 2d 128, 96 S.

Ct. 984 (1976), the Supreme Court concluded that the prosecutor enjoys the same absolute immunity under the federal civil rights act as he did at common law:

"We conclude that the considerations outlined above dictate the same absolute immunity under [Title 42 U.S.C.] Sec. 1983 that the prosecutor enjoys at common law. To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system. Moreover, it often would prejudice defendants in criminal cases by skewing post-conviction judicial decisions that should be made with the sole purpose of insuring justice. With the issue thus framed, we find ourselves in agreement with Judge Learned Hand, who wrote of the prosecutor's immunity from actions for malicious prosecution:

" 'As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.' *Gregoire v. Biddle*, 177 F. 2d 579, 581 (CA2 1949), cert. denied, 339 U. S. 949 (1950)." (424 U. S. at 427-428.)

In approving a statement made by the Court of Appeals for the Second Circuit, the court in *Imbler*, supra, stated:

"In our opinion the law requires us to hold that a special assistant to the Attorney General of the United States, in the performance of the duties imposed upon him by law, is immune from a civil action for malicious prosecution based on an indictment and prosecution, although it results in a verdict of not guilty rendered by a jury. The immunity is absolute, and is grounded on principles of public policy." (424 U. S. at 422.)

Based on these standards we conclude that the statements complained of in this case were made in a judicial proceeding, the defendants were clothed with absolute immunity, and the trial court was correct in dismissing these actions for failure of the plaintiff to state a cause of action against the defendants, Rumsey and Sanborn.

Having determined the controlling issue in this case, we now discuss briefly the remaining points raised on appeal.

Plaintiff asserts that the court-proceeding privilege just discussed goes only to utterances that are "relevant" to the lawsuit, and claims that the language complained of here was not relevant to the prosecution. Assuming for the sake of argument that the privilege is so limited, plaintiff conceded on oral argument that

the statements made by the defendant Rumsey relating to "liar" and "public corruption" could be considered as an attack upon plaintiff's credibility as a witness, and thus relevant. The main thrust of his argument is that the words "son of a bitch" were not relevant and are actionable.

In *Moriarty v. Lippe*, 162 Conn. 371, 294 A. 2d 326 (1972), the plaintiff, a Norwalk police officer, while attempting to have the defendant move her improperly parked car, was called a "stupid son of a bitch" and other derogatory names in front of an assembled crowd. The court said:

"Other words uttered in the presence of those assembled, 'clown,' 'big fat ape,' 'smart aleck,' 'big fat oaf,' and 'stupid son of a bitch,' were here merely gross and vulgar expressions of abuse. The general rule has long been that such words of general abuse, regardless of how rude, uncouth or vexatious are not slanderous per se and cannot support recovery in a slander action in the absence of a showing of special damages. Notes, 13 A.L.R. 3d 1286, 1290, 37 A.L.R. 883, 885.

"We conclude, then, that none of the allegedly slanderous words could be considered actionable per se in any sense. The matter then becomes one of law for the court. *Charles Parker Co. v. Silver City Crystal Co.*, 142 Conn. 605, 612, 116 A. 2d 440; *Burns v. Telegram Publishing Co.*, 89 Conn. 549, 552, 94 A. 917; *Donaghue v. Gaffy*, 54 Conn. 257, 266, 7 A. 552. The trial court erred in refusing to direct a verdict for the defendant Lippe on the slander count." (p. 385.)

We find certain similarities between *Moriarty* and the present case. The statements were made in public, the utterances did not charge a crime or improper conduct or lack of skill or integrity in one's profession or business, and there were no allegations of special damages.

The two cases are distinguishable in that the statements in the present case were made in a judicial proceeding where the speaker was clothed with absolute immunity.

Although we do not condone the use of such words, we agree with the *Moriarty* decision that the allegedly slanderous words are not actionable *per se* and the matter becomes one of law for the court. Furthermore, it would appear from common knowledge and experience that such words do not have the same meaning in today's society as they did in the past. Hence, even if the expression were not privileged, the words were not actionable.

We now turn our attention to plaintiff's argument that Count IV states a cause of action against the defendant Sanborn for invasion of privacy. Basically, plaintiff contends that defendant San-

born had for several years conducted continuing investigations of his private and business affairs, ostensibly in Sanborn's capacity as district attorney, but in fact such conduct was outside the scope of his authority.

Defendant Sanborn responds that his actions were within the scope of his authority as district attorney for Sedgwick County, Kansas.

It has long been recognized that the county or district attorney is the chief law enforcement official in his jurisdiction and that a criminal proceeding is a matter of state concern and the control of it is in the county attorney. (*State v. Pruett,* 213 Kan. 41, 515 P. 2d 1051; *State v. Kilpatrick,* 201 Kan. 6, 439 P. 2d 99.) It is his duty to inquire into the facts of violations. If the inquiry disclose the fact that an offense has been committed, he must institute proceedings for its punishment. (*State v. Trinkle,* 70 Kan. 396, 78 Pac. 854.) By statute he is given the authority to conduct inquisitions and to grant immunity to witnesses. (K.S.A. 22-3101 and 22-3102.) The same policy considerations requiring absolute immunity for communications made during the course of a prosecution require immunity for conduct in investigations which may lead to a prosecution. We hold that the power of the district attorney to investigate alleged violations within his jurisdiction is unquestionable and his motive in so doing may not be the subject of a lawsuit against him.

Finally, plaintiff raises as one of his points of appeal that the trial court erred in denying his motion for leave to amend his petition. On oral argument, plaintiff conceded that he could not improve upon his previously amended petition. Such admission disposes of this point.

For the reasons set forth in this opinion, the judgment is affirmed as to both defendants.