812 F.2d 128
 55 USLW 2481
 Benjamin EDELSTEIN, Appellant,
v.
Hon. Robert N. WILENTZ, Hon. Robert L. Clifford, Hon. Alan
B. Handler, Hon. Steward G. Pollock, Hon. Daniel
J. O'Hern, Hon. Marie L. Garibaldi, Hon.
Gary S. Stein, and the Supreme
Court of New Jersey.
 Nos. 86-5282, 86-5487.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
Feb. 17, 1987.
Decided Feb. 26, 1987.
Rehearing and Rehearing En Banc Denied March 31, 1987.
 
 W. Cary Edwards, Atty. Gen. of N.J., Deborah T. Poritz, Asst. Atty. Gen., Ross A. Lewin, Deputy Atty. Gen., Trenton, N.J., for appellees.
 Benjamin Edelstein, Asbury Park, N.J., pro se.
 Before GIBBONS, Chief Judge, SLOVITER, Circuit Judge, and SCIRICA, District Judge.*
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 FACTS
 
 1
 Benjamin Edelstein, a New Jersey attorney, filed a complaint in federal court pursuant to 42 U.S.C. Sec. 1983 against all of the members of the New Jersey Supreme Court seeking a declaration that a Rule promulgated by the New Jersey Supreme Court deprived Edelstein and all other attorneys of the State of New Jersey of their federal constitutional rights guaranteed by the First, Fifth and Fourteenth Amendments and an injunction against continued enforcement of the Rule. The Rule, which gives immunity to ethics grievants, provides:
 
 
 2
 Grievants in ethics matters, clients in fee arbitration cases and witnesses in both ethics and fee matters shall be absolutely immune from suit, whether legal or equitable in nature, for all communications to Committees, Fee Committees, the Director, the Board, or to appropriate staff and for testimony given in ethics or fee arbitration proceedings.
 
 
 3
 N.J.Sup.Ct.R. 1:20-11(b).
 
 
 4
 Rule 1:20-11(b) effectively bars Edelstein's pending state court suit for malicious prosecution against Raymond Kramer, the husband of one of Edelstein's clients, who filed an ethics complaint against Edelstein in 1982 with the Monmouth County Bar Association Ethics Commission which was dismissed in 1985. Edelstein's suit was filed pursuant to N.J.S.A. 2A:47A-1 which gives professionals the right to file suit against "any person who falsely and maliciously and without probable cause" makes a complaint of unethical or unprofessional conduct to a disciplinary body.
 
 
 5
 Edelstein's federal action was assigned to District Judge Robert E. Cowen. Edelstein filed a motion seeking Judge Cowen's recusal, alleging that Cowen was biased because he had served from 1973 to 1978 as Director of the Office of the New Jersey State Courts charged with enforcement of the New Jersey Supreme Court rules governing attorneys' professional conduct. In ruling on the motion, Judge Cowen noted that it had been eight years since he had been employed by the New Jersey State Courts and that he had not been involved in the "promulgation or passing or acceptance" of Rule 1:20-11(b), which was promulgated after he left his position with the New Jersey State Courts. App. at 38-39. Concluding that he did "not see how anyone could reasonably say I lack objectivity to review the substantive claims which are made in this matter," Judge Cowen declined to recuse himself. App. at 39.
 
 
 6
 The defendants filed a motion to dismiss Edelstein's complaint, which was briefed and argued before the district court. At the hearing, Edelstein contended not only that the Rule as promulgated constitutes a violation of attorneys' rights under the Equal Protection and Due Process clauses, as he alleged in his complaint, but also that the Rule is invalid under the New Jersey Constitution because it was promulgated by the Supreme Court rather than by the legislature. This contention was not made in Edelstein's federal complaint.
 
 
 7
 With respect to Edelstein's federal constitutional claims, the court concluded that there was a rational basis for the rule, namely the encouragement of ethics complaints "to ferret out unethical practitioners and to motivate complainants to do this, to file complaints without fear of retribution. It makes sense to immunize them." App. at 52. Since the court found that attorneys are not a suspect class, the rational basis for the Rule defeated Edelstein's claim that it violated equal protection or due process. With respect to Edelstein's state constitutional claim, the court stated that it had "no jurisdiction in the matter." App. at 52. The court then dismissed Edelstein's complaint with prejudice.
 
 
 8
 Edelstein filed a motion seeking to have the court amend its order to dismiss the state law claim without prejudice. Following oral argument, the district court denied the motion for amendment, but clarified its position, explaining that Edelstein's state law claim had been dismissed not on the merits but because the court had "declined to exercise pendent jurisdiction." App. at 61.
 
 
 9
 Edelstein appeals both from the denial of his request for recusal and from the dismissal of his claims.
 
 II.
 RECUSAL
 
 10
 Edelstein's motion for recusal was based on his affidavit alleging that Judge Cowen "may have a personal bias against me." The applicable federal statute requires a federal judge to recuse from further participation in any proceeding in which "he has a personal bias or prejudice concerning a party." 28 U.S.C. Sec. 455(b)(1). However, Edelstein failed to support his allegation of personal bias with any evidence other than the allegation of Judge Cowen's prior employment. Since Judge Cowen had not had any personal responsibility for or connection with the subsequently enacted Rule, his prior employment does not constitute bias in fact which requires recusal under section 455(b)(1). See United States v. Nobel, 696 F.2d 231, 235 (3d Cir.1982), cert. denied, 462 U.S. 1118, 103 S.Ct. 3086, 77 L.Ed.2d 1348 (1983).
 
 
 11
 In the absence of actual bias, we look to whether the judge must recuse because "his impartiality might reasonably be questioned." 28 U.S.C. Sec. 455(a). In determining whether recusal is required under this provision, we must apply an objective standard. As we have recently stated, under section 455(a), "a judge should recuse himself where a reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality." United States v. Dalfonso, 707 F.2d 757, 760 (3d Cir.1983).
 
 
 12
 Since a judge's prior position as a United States Attorney does not require his or her recusal unless the case at issue arose before the judge left that position, see Barry v. United States, 528 F.2d 1094 (7th Cir.), cert. denied, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976); In re Grand Jury Investigation, 486 F.2d 1013, 1015-16 & n. 3 (3d Cir.1973), cert. denied, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974), Judge Cowen's prior position with the New Jersey courts could not reasonably be deemed to be a basis to question Judge Cowen's ability to rule impartially in this case. Our standard of review is abuse of discretion. See Johnson v. Trueblood, 629 F.2d 287, 290 (3d Cir.1980), cert. denied, 450 U.S. 999, 101 S.Ct. 1704, 68 L.Ed.2d 200 (1981). We cannot say that Judge Cowen abused his discretion in declining to recuse himself.
 
 III.
 CONSTITUTIONAL CHALLENGES TO R. 1:20-11(b)
 
 13
 Edelstein contends that because Rule 1:20-11(b) bars attorneys from filing malicious prosecution actions that other professionals can file pursuant to N.J.S.A. 2A:47A-1, the Rule's classification of attorneys violates the Equal Protection Clause. We must subject the classification to strict judicial scrutiny only if it discriminates against a suspect class or impinges on a fundamental interest. Hahn v. United States, 757 F.2d 581, 593-94 (3d Cir.1985). Since Edelstein does not contend that attorneys constitute a suspect class, we consider only his contention that the classification impinges on fundamental rights.
 
 
 14
 The Constitution does not create a fundamental right to pursue specific tort actions. States may create immunities which effectively eliminate causes of action, subject only to the requirement that their action not be arbitrary or irrational. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 432-33, 102 S.Ct. 1148, 1155-56, 71 L.Ed.2d 265 (1982); Martinez v. California, 444 U.S. 277, 282 & n. 5, 100 S.Ct. 553, 557 & n. 5, 62 L.Ed.2d 481 (1980); Ferri v. Ackerman, 444 U.S. 193, 198, 100 S.Ct. 402, 406, 62 L.Ed.2d 355 (1979); see also Davidson v. O'Lone, 752 F.2d 817, 830 (3d Cir.1984) (in banc), aff'd sub nom., Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).
 
 
 15
 Edelstein asserts that the Rule violates his constitutional rights to earn a livelihood and to practice law. Appellant's Brief at 13. Even if there were a "constitutional right to earn a living," an issue we do not reach, Edelstein has failed to explain how a rule which at most may indirectly encourage malicious ethics complaints impinges on his ability to practice law. The subject of a frivolous ethics complaint encouraged by the Rule still retains the right and ability to practice law and is denied only the ability to pursue a cause of action against the prosecutor of the frivolous complaint.
 
 
 16
 Moreover, Edelstein's contention that there is a fundamental right to practice law is contrary to the established precedent that, absent impingement on some other fundamental right, states may establish regulations limiting admission to the bar subject only to review under a rational relationship standard. See Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957). The Constitution does not create fundamental interests in particular types of employment. See Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 313, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976) (per curiam); Malmed v. Thornburgh, 621 F.2d 565, 570 (3d Cir.), cert. denied, 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980) (no fundamental interest in public employment). We have previously held that the right to practice law is not a fundamental right for purposes of due process or equal protection analysis. In the Matter of Roberts, 682 F.2d 105, 108 & n. 3 (3d Cir.1982) (per curiam). Accord Nordgren v. Hafter, 789 F.2d 334, 338 & n. 2 (5th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 177, 93 L.Ed.2d 113 (1986); Lupert v. California State Bar, 761 F.2d 1325, 1327 n. 2 (9th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 241, 88 L.Ed.2d 251 (1985).
 
 
 17
 In the absence of any fundamental right, we proceed to analyze the classification under a rational relationship standard. The Rule was adopted by a divided New Jersey Supreme Court, 4 votes to 3. The conflicting views were set forth in the majority and dissenting opinions on its adoption. The majority asserted that the Rule was justified because of the public purposes of "the enhancement of public confidence and the added assurance that our attorney disciplinary system effectively protects the public interest." In the Matter of the Hearing on Immunity for Ethics Complainants, 96 N.J. 669, 679, 477 A.2d 339, 344 (1984). Edelstein concedes that the state has a legitimate interest in insuring the effectiveness of regulations governing attorney conduct. See Goldfarb v. Virginia State Bar, 421 U.S. 773, 792, 95 S.Ct. 2004, 2015, 44 L.Ed.2d 572 (1975) (compelling interest in regulating lawyers). He contends, however, that the Rule does not further this purpose.
 
 
 18
 Edelstein argues, as did the minority of the New Jersey Supreme Court, that the qualified immunity granted complainants by N.J.S.A. 2A:47A-1 adequately serves the public interest. Hearing on Immunity, 96 N.J. at 681, 477 A.2d at 345 (Clifford, J., dissenting). He supports this view by reference to the qualified immunity adopted in federal court which he claims provides, in most cases, adequate protection for those charged with the discretionary enforcement of regulatory standards. See Malley v. Briggs, --- U.S. ----, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986); Davis v. Scherer, 468 U.S. 183, 190-91, 104 S.Ct. 3012, 3017-18, 82 L.Ed.2d 139 (1984); Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Edelstein also argues that if his complaint had been permitted to proceed to discovery, he would have produced statistics showing that the number of ethics complaints dropped after promulgation of the Rule, thus proving that the Rule has not served the purpose of encouraging ethics complaints.
 
 
 19
 The New Jersey Supreme Court was aware of comparable arguments when it chose to implement the Rule. In fact, the dissenting Justices described the choice between absolute and qualified immunity as "com[ing] down, plainly and simply, to a judgment call." Hearing on Immunity, 96 N.J. at 680, 477 A.2d at 344. In making this judgment call, the New Jersey Supreme Court recognized that the number of ethics complaints had grown in recent years under the qualified immunity standard and that "these facts could be used to support the opposite conclusion, on the ground that the rule allowing suit by the attorney against the malicious complainant has apparently had no chilling effect whatsoever." Hearing on Immunity, id. at 674, 477 A.2d at 341.
 
 
 20
 Despite the numbers, the New Jersey Supreme Court opted for absolute immunity. It noted that the disciplinary system is effectively run by attorneys and that attorneys' ability to "muzzle potential complainants," by threatening legal action which, while relatively costless to the attorney, might impose substantial costs on complainants, "should not be underestimated." Id. at 675, 477 A.2d at 342. The Court stressed the potential for intimidation, stating:
 
 
 21
 We should not tolerate the possibility within our disciplinary system that a potential ethics complainant may be intimidated by an attorney into not filing a complaint. The need for public confidence in the integrity of that system is much too important.
 
 
 22
 Id. at 676, 477 A.2d at 342. In short, the New Jersey Supreme Court made a policy judgment that the imposition of the absolute immunity rule for ethics complainants was justified by the need to maintain and increase public confidence in the bench and the bar.
 
 
 23
 We cannot say that the position taken by the New Jersey Supreme Court is irrational. The choice of the absolute immunity rule represents a reasoned policy choice directed to the legitimate state goal of effective regulation of attorney conduct. This is sufficient to uphold the Rule against Edelstein's equal protection challenge.[1]
 
 
 24
 Edelstein also raises a due process challenge to the Rule. Since there is no property interest infringed by a rule barring a malicious prosecution action, Edelstein's claim must be evaluated as a substantive due process challenge rather than as a procedural due process challenge. See Davidson, 752 F.2d at 830; Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538-39, 105 S.Ct. 1487, 1491-92, 84 L.Ed.2d 494 (1985). However, a claimed deprivation of substantive due process based on a state's abolition of a previously created right of action is subject to analysis under a rational relationship standard, Logan, 455 U.S. at 432-33, 102 S.Ct. at 1155-56, and therefore the basis of our prior rejection of Edelstein's equal protection challenge is equally applicable here.
 
 
 25
 Edelstein's final federal constitutional contention is that because the Rule gives the ethics complainant "the absolute right to maliciously and intentionally slander or libel" an attorney, it "chill[s] [the attorney's] freedom of speech," Appellant's Brief at 21, thereby impinging on the attorney's First Amendment rights. His argument on freedom of speech chill is incomprehensible. Nothing in the Rule deprives attorneys of their ability to contest charges before Ethics Committees. Edelstein does not explain how or why the inability to file a malicious prosecution suit against an unsuccessful ethics complainant would chill an attorney's speech in the context of his or her professional conduct.
 
 
 26
 Furthermore, in evaluating Edelstein's ambiguous claim of chill, we note that the Rules impose a confidentiality requirement on ethics complainants, see N.J.Sup.Ct.Rule 1:20-10,[2] and that complainants who violate that Rule lose their immunity from suit for publication or distribution of information. See Rule 1:20-11(b).[3] In the absence of public knowledge of the complaint, it is farfetched to assume any chill.
 
 IV.
 PENDENT CLAIM
 
 27
 Finally, we address Edelstein's argument that the district court erred in dismissing his claim that the New Jersey Supreme Court's promulgation of Rule 1:20-11(b) violated the New Jersey Constitution. The district court explained that it had declined to exercise pendent jurisdiction over the state law claim because all of Edelstein's federal claims had been dismissed on the merits. We review the district court's decision to decline jurisdiction over a pendent claim under an abuse of discretion standard. The precedent of this court is that a refusal to exercise pendent jurisdiction over a state law claim after dismissal of all federal claims prior to trial is ordinarily not an abuse of discretion. See Walck v. American Stock Exchange, Inc., 687 F.2d 778, 792-93 (3d Cir.1982), cert. denied, 461 U.S. 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983); Tully v. Mott Supermarkets, Inc., 540 F.2d 187, 196 (3d Cir.1976).
 
 
 28
 Edelstein argues, however, that the dismissal for lack of jurisdiction must be without prejudice so that he is not barred on the merits of his state law claim. We agree. However, the district court did not err in refusing to add "without prejudice" to the order dismissing the complaint because the complaint did not contain Edelstein's state law claim, which was argued orally. In effect, the district court simply refused to allow Edelstein to interpose a pendent state law claim, since it had determined to dismiss the federal claims. That was neither error nor an abuse of discretion.
 
 V.
 
 29
 For the reasons set forth above, we will affirm both the district court's order dismissing Edelstein's complaint and its subsequent order refusing to amend that order.
 
 
 
 *
 Hon. Anthony J. Scirica, United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 We reject Edelstein's contention that he was entitled to discovery to show a decrease in the number of ethics complaints following implementation of the Rule. The district court ruled on Edelstein's facial challenge, and a decrease in ethics complaints would not signify that promulgation of the Rule was irrational
 
 
 [2]
 N.J.Sup.Ct.Rule 1:20-10(a) states, in part:
 All proceedings conducted and records made pursuant to R.1:20 shall be confidential and shall not be disclosed to or attended by anyone except as authorized by these rules.
 
 
 [3]
 Rule 1:20-11(b) states that its grant of "immunity shall not extend to any publication or distribution of information by a grievant, client or witness that violates R.1:20-10."