No. 66,434

LAURENCE M. JARVIS, *Appellant/Cross-appellee,* v.
TERRY W. DRAKE, *Appellee/Cross-appellant.*

(830 P.2d 23)

Opinion filed April 10, 1992.

*Laurence M. Jarvis,* of Laurence M. Jarvis, Chartered, of Kansas City, argued the cause and was on the brief for appellant/cross-appellee pro se.

*Bill L. Klapper,* of Turner, Vader & Koch, Chtd., of Kansas City, argued the cause and was on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

Allegrucci, J.: Laurence M. Jarvis, an attorney, filed this action against the defendant, Terry W. Drake, to recover for malicious prosecution, libel, and tortious interference with contract. The district court concluded that Drake was immune from suit and entered summary judgment in his favor. Jarvis appeals from the district court's entry of summary judgment. Drake cross-appeals from the district court's denial of his request for attorney fees. The appeal was transferred from the Court of Appeals to this court by order of the court on January 7, 1992.

Because it is the district court's entry of summary judgment in favor of Drake which is challenged on appeal, this court must read the record in the light most favorable to Jarvis. *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, Syl. ¶ 4, 662 P.2d 1203 (1983). The facts, therefore, are related in that light.

Jarvis is an attorney who practices in Wyandotte County, Kansas. Among his clients is Judith Drake, the former wife of defendant Terry Drake. On behalf of Judith Drake, Jarvis sought to recover from Terry Drake unpaid child support and insurance reimbursement payments and to obtain an increase in child support payments.

In May 1989 Terry Drake wrote a letter to the office of the disciplinary administrator, alleging the following against Jarvis: (1) twice meeting in secret with the administrative hearing officer who handled the Drake divorce; (2) requesting the Internal Revenue Service to investigate Terry Drake; and (3) wrongfully filing a garnishment on Terry Drake's wages and doing so without authority from Judith Drake. Jarvis alleges that Drake knew these allegations were false when he made them.

After an investigation of Drake's allegations, his complaint was dismissed by the disciplinary administrator for lack of probable cause.

Jarvis filed a petition against Drake in the District Court of Wyandotte County, seeking to recover for malicious prosecution and libel. He later was allowed to amend his petition to add a charge of tortious interference with contract. Jarvis alleged that Drake "maliciously, wrongfully, intentionally, and without probable cause file[d] false, serious, and groundless charges against [him]."

Drake filed a motion for summary judgment on the ground that at all times pertinent to the allegations he was cloaked with immunity. The district court granted Drake's motion for summary judgment and affirmed its own ruling upon consideration of Jarvis' motion for rehearing.

Drake requested that the district court award to him the amount of the attorney fees expended in defense of Jarvis' allegations. The district court declined to award attorney fees.

We first consider if the district court erred in granting summary judgment in favor of defendant on the ground that he is immune

from suit under Supreme Court Rule 223 (1991 Kan. Ct. R. Annot. 172). Supreme Court Rule 223, entitled "Immunity," states as follows:

"Complaints, reports, or testimony in the course of disciplinary proceedings under these Rules shall be deemed to be made in the course of judicial proceedings. All participants shall be entitled to judicial immunity and all rights, privileges and immunities afforded public officials and other participants in actions filed in the courts of this state."

The only case which interprets this rule involves a different issue—self-incrimination. *State v. Savaiano*, 234 Kan. 268, 271-74, 670 P.2d 1359 (1983).

In 1988, Rule 223 was amended to add the words, "judicial immunity and," in the second sentence. Thus, before the amendment, all participants in disciplinary proceedings were entitled to "immunities afforded public officials and other participants in actions filed in the courts of this state." 1987 Kan. Ct. R. Annot. 121. After the amendment, all participants in disciplinary proceedings are entitled to "judicial immunity" as well as "immunities afforded public officials and other participants in actions filed in the courts of this state." 1991 Kan. Ct. R. Annot. 172.

When called as a witness at the hearing on Drake's motion for summary judgment, Bruce Miller, Disciplinary Administrator for the State of Kansas, testified that the addition of "judicial immunity" to Rule 223 was intended to increase or strengthen the protection afforded participants in disciplinary proceedings. He testified that:

"The closest thing to absolute immunity to exist is judicial immunity.

"In discussing this rule with the Court, one of the things that we wanted to do was to re-enforce the rights of a person, of a citizen, of the state, to make complaints against attorneys to be handled by an agency of the supreme court.

"And the court agreed—this was, in fact, my suggestion to the court, and the court did agree with that suggestion and did adopt it and put it into the rule.

. . . .

"And this is the kind of immunity that I believe the court was attempting to bestow upon all personnel connected with the disciplinary—all people connected with the disciplinary process, be the[y] complainants, be the[y] respondent, attorneys, be they—any of the investigators, of the—or the Kansas Board [for] Discipline that [make] the decision in regards to these complaints as they go through the system."

According to Miller, the reason he suggested strengthening the grant of immunity was that he and his staff

"just find it to be of extreme importance [to] the entire ethics system of this state that any person that has a complaint against an attorney be allowed to express that complaint. It's the purpose of this system to find out whether it has merit or [does] not [have] merit."

Judicial immunity is a long- and firmly established common-law rule. It was described by the United States Supreme Court in the following words:

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in *Bradley v. Fisher*, 13 Wall. 335 [, 20 L. Ed. 646] (1872). This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.' (*Scott v. Stansfield*, L.R. 3 Ex. 220, 223 [1868], quoted in *Bradley v. Fisher, supra*, 349; note, at 350.) It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation." *Pierson v. Ray*, 386 U.S. 547, 553-54, 18 L. Ed. 2d 288, 87 S. Ct. 1213 (1967).

The principle of judicial immunity has remained viable in the face of challenges in some very emotionally and politically charged cases. *Pierson v. Ray*, for example, arose out of the arrests of black and white clergymen for their use of segregated facilities at an interstate bus terminal in Mississippi in 1961. *Stump v. Sparkman*, 435 U.S. 349, 55 L. Ed. 2d 331, 98 S. Ct. 1099, *reh. denied* 436 U.S. 951 (1978), involved judicial approval of a mother's petition to have her minor daughter sterilized on the ground that the daughter was "somewhat retarded." The daughter, who attended public school and had been promoted each year, was told at the time that she was to have her appendix removed. When the daughter later married and wished to conceive, she learned the true nature of the surgery she had undergone. The Supreme Court held that the judge who had approved the petition

for sterilization was not subject to civil liability because he was absolutely immune.

Since *Stump v. Sparkman* was decided in 1978, the Supreme Court has considered several cases in which a determination was made that the doctrine of judicial immunity did not apply where a judge was acting in an administrative rather than judicial capacity, but there have been no decisions which diminished the protection afforded by the common-law rule. See *Forrester v. White*, 484 U.S. 219, 98 L. Ed. 2d 555, 108 S. Ct. 538 (1988); *Supreme Court of Va. v. Consumers Union*, 446 U.S. 719, 64 L. Ed. 2d 641, 100 S. Ct. 1967 (1980). There is no question that judicial immunity is applicable in the present case, since Rule 223 specifies that complaints in disciplinary proceedings "shall be deemed to be made in the course of *judicial* proceedings." (Emphasis added.)

The rationale for judicial immunity is to free judges to make controversial decisions without the intimidation of exposure to personal liability. The Supreme Court pointed out in *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L. Ed. 646 (1872), that permitting dissatisfied litigants to make the decisions of judges the basis of personal consequences for them would tend to subvert justice.

The disciplinary administrator testified that the same rationale underlies the Rule 223 grant of judicial immunity to all participants in disciplinary proceedings. For complainants, apprehension of personal liability for presenting a question of professional responsibility to the disciplinary administrator might tend to subvert the system established for ensuring that persons holding licenses to practice law are "fit to be entrusted with professional and judicial matters." Supreme Court Rule 202 (1991 Kan. Ct. R. Annot. 142). The complainants' freedom from apprehension should tend to promote the disciplinary administrator's investigation of "all matters involving possible misconduct," as required by Supreme Court Rule 205(c)(2) (1991 Kan. Ct. R. Annot. 147).

Jarvis contends that Rule 223 was not intended to abolish the common-law cause of action for malicious prosecution, but that is the effect of the district court's ruling. He argues that, even if Rule 223 grants absolute immunity in defamation cases, it does not bar a cause of action for malicious prosecution. The distinction

he draws is between privileged communications and the act of instituting a proceeding.

Jarvis' argument seems to be that statements made by Drake in his complaint are protected under the rule, but that the conduct of Drake in filing the complaint with the disciplinary administrator is not protected. We find no such distinction in Rule 223. It provides protection for persons. There is nothing in the text of the rule which would indicate that the protective cloak may or may not be donned depending on whether it is needed on account of statements or conduct.

The language in earlier Kansas cases involving various aspects of immunity tends to confirm that no distinction need be drawn between acts and statements. *Sampson v. Rumsey*, 1 Kan. App. 2d 191, 563 P.2d 506 (1977), involved the question whether a prosecutor was immune from suit by a witness for slander, conspiracy to slander, abuse of process, invasion of privacy, and intrusion on seclusion. The standards applied by the Court of Appeals in determining that the prosecutor was absolutely immune were set out as follows:

"In *Clear Water Truck Co., Inc. v. M. Bruenger & Co., Inc.*, 214 Kan. 139, 142-143, 519 P.2d 682, the court cited with approval the following rule of absolute privilege in judicial proceedings referred to in *Froelich v. Adair*, 213 Kan. 357, 516 P.2d 993:

'. . . Judicial proceedings are absolutely privileged communications, and statements in the course of litigation otherwise constituting an action for slander, libel, or one of the invasion of privacy torts involving publication, are immune from such actions. They are privileged communications because of the overriding public interest in a free and independent court system. *This absolute privilege extends immunity to parties to private litigation and to anything published in relation to a matter at issue in court, whether said in pleadings, affidavits, depositions or open court.* (*Weil v. Lynds*, 105 Kan. 440, 185 Pac. 51.)' " (Emphasis added.) 1 Kan. App. 2d at 194.

In this regard, the court also said: "The same policy considerations requiring absolute immunity for communications made during the course of a prosecution require immunity for conduct in investigations which may lead to a prosecution." 1 Kan. App. 2d at 197.

Jarvis argues that the scope of judicial immunity is not absolute. The language from *Froelich v. Adair*, 213 Kan. 357, 516 P.2d

993 (1973), which is quoted in *Sampson*, and the decision in *Sampson* show that this argument has no merit. The protection afforded the prosecuting attorneys in *Sampson* was said to be absolute.

At the time *Sampson* was decided, the text of what is now Rule 223 did not contain the phrase "judicial immunity." It entitled participants in disciplinary proceedings to the "immunities afforded public officials." The immunity afforded the public prosecutors in *Sampson* was absolute. When absolute immunity has been enhanced by the addition of judicial immunity, there is little question that the resulting immunity is absolute.

We find ourselves in the unique role of interpreting our own rule. If Rule 223 were ambiguous, then our intent in adopting the rule and amendment would be controlling. We do not find the rule to be ambiguous. The grant of immunity afforded by Rule 223 is absolute and precludes the plaintiff from filing a malicious prosecution action against Drake. It should be noted that the proceedings in a disciplinary matter are confidential under Supreme Court Rule 222 (1991 Kan. Ct. R. Annot. 171) up to the determination of probable cause. Because no finding of probable cause was made as to Drake's complaint against the plaintiff, the proceedings were confidential and not a matter of public record.

We next consider if Rule 223 is unconstitutional. Jarvis' statement of this issue specifies denial of equal protection as the constitutional infirmity in Rule 223. He cites United States Supreme Court cases involving antimiscegenation statutes and a state requirement that an indigent defendant pay an appellate filing fee. He also cites § 18 (but not § 1, the equal protection clause) of the Bill of Rights of the Kansas Constitution. His reliance on these authorities seems to be for the proposition that his right to sue Drake is a fundamental right which cannot be curtailed by the state unless the abridgment is necessary to a compelling state interest. We do not agree.

In *Edelstein v. Wilentz*, 812 F.2d 128 (3d Cir. 1987), a New Jersey attorney challenged the constitutionality of a New Jersey Supreme Court rule similar to our Rule 223. The New Jersey rule created absolute immunity to grievants and witnesses in ethics cases. The New Jersey Supreme Court in 1955 held that

the filing of a complaint against an attorney with the county ethics and grievance committee was privileged so as to preclude an action for malicious prosecution. *Toft v. Ketchum*, 18 N.J. 280, 113 A.2d 671, *cert. denied* 350 U.S. 887 (1955). The state legislature immediately responded by enacting a statute which expressly allowed a "malicious prosecution action to be brought against the complainant by an attorney who is the subject of an ethics complaint." *Matter of Hearing on Immunity for Ethics Complainants*, 96 N.J. 669, 672, 477 A.2d 339 (1984). See N.J. Stat. Ann. 2A:47A-1 (West 1987). The New Jersey Supreme Court expressed concern that the statute may have been "deterring non-malicious potential complainants" and added that the "potential for intimidation is obvious." 96 N.J. at 675. Therefore, the New Jersey court adopted a new rule which provided absolute immunity for grievants, "despite its clear conflict with existing legislation." 96 N.J. at 678. It is that rule which was challenged in *Edelstein v. Wilentz.*

In *Edelstein*, the court discussed fundamental rights for the purpose of determining which level of scrutiny was appropriate for the New Jersey rule which provided immunity for grievants. The court determined that there was no fundamental right involved and analyzed the classification under a rational relationship standard. 812 F.2d at 132. Nonetheless, the court upheld the constitutionality of the rule, stating:

"In short, the New Jersey Supreme Court made a policy judgment that the imposition of the absolute immunity rule for ethics complainants was justified by the need to maintain and increase public confidence in the bench and the bar.

"We cannot say that the position taken by the New Jersey Supreme Court is irrational. The choice of the absolute immunity rule represents a reasoned policy choice directed to the legitimate state goal of effective regulation of attorney conduct. This is sufficient to uphold the Rule against Edelstein's equal protection challenge." 812 F.2d at 133.

The same basic policy decision was made by this court in amending Supreme Court Rule 223, and the same analysis and reasoning applied in *Edelstein* apply in the present case.

Our judicial system cannot survive without the public's trust in the system and the belief that justice will prevail. The public is asked to place its trust in a system dominated by attorneys.

To a great extent, that trust is measured by how we, the bench and bar, implement and enforce the disciplinary rules. The purpose of Supreme Court Rule 223 is to encourage the members of the public to file complaints against attorneys who have violated the rules of ethics. It is rationally related to the objective of effectively regulating the conduct of the bar, which in turn protects the public's interest. Thus, Supreme Court Rule 223 is not unconstitutional as a violation of the equal protection guarantee of the United States Constitution.

We next consider Drake's cross-appeal. After the district court granted Drake's motion for summary judgment, Jarvis filed a motion for rehearing. Drake responded with a request for attorney fees. Drake asserted that the suit's lack of merit should have been apparent to Jarvis from the plain language of Rule 223 and that Jarvis' motion for rehearing following summary judgment raised no new issues.

The district court denied the request for attorney fees. Drake filed a cross-appeal from the denial of attorney fees.

Drake concedes that the awarding of attorney fees is left to the sound discretion of the district court. In *Cornett v. Roth*, 233 Kan. 936, 945, 666 P.2d 1182 (1983), this court stated: "The assessment of attorney fees under K.S.A. 1982 Supp. 60-211 and K.S.A. 1982 Supp. 60-2007(*b*) lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion."

K.S.A. 1991 Supp. 60-211 provides in pertinent part that an attorney's signature on a pleading constitutes a certificate that it "is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." K.S.A. 60-2007(b) provides in pertinent part that reasonable attorney fees incurred as a result of defending against the assertion of a claim "without a reasonable basis in fact and not in good faith" should be allowed. Subsection (d) adds that "[t]he purpose of this section is not to prevent a party from litigating bona fide claims or defenses, but to protect litigants from harassment and expense in clear cases of abuse."

Drake contends that this is a case of abuse because Jarvis initiated the suit despite the plain language of the rule and despite being advised by the disciplinary administrator that Rule 223

afforded absolute immunity. Bruce Miller testified that after the grievance was dismissed, Jarvis wrote to him stating his intention to sue Drake. Miller further testified that he telephoned Jarvis and confirmed the telephone conversation with a letter. He stated to Jarvis: "While there is no applicable case law under this rule, I would believe that it is intended to give every person connected with the court's disciplinary system complete immunity from suit. . . . There may or may not be an exception to this immunity for acts of malicious or intentional defamation."

In light of Miller's testimony as to his advice to Jarvis and the fact that this is the first time this court has considered the scope and applicability of the immunity granted by Rule 223, we cannot say that Jarvis' petition was without reasonable basis in fact and was not in good faith. We therefore find that the district court did not abuse its discretion in denying an award of attorney fees.

The judgment of the district court is affirmed.